GEORGE F. PHILLIPS *vs.* CITY OF BOSTON.

Suffolk.    November 18, 1889. — January 2, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Boston — Police Officer — Removal — Abandonment of Office — Waiver.*

A police officer of the city of Boston, upon the reorganization of the police department in 1878, was removed without a hearing, by a vote duly communicated to him by the board of police commissioners appointed and confirmed under the provisions of the St. of 1878, c. 244, and, as ordered, delivered up "the buttons and badge of his office, and all other city property in his possession." He never resigned his office, nor was there any other communication between him and the board; and he was prevented thereafter from performing, and made no attempt to perform, any act of police duty, although ready and willing to do so. Nearly ten years after such removal, having meanwhile made no demand for his salary, ·he brought an action against the city to recover his salary for the intervening time. *Held*, that he had abandoned and waived all claim to the office, and that the action could not be maintained.

CONTRACT to recover salary, as a police officer of the city of Boston, from October 21, 1878, to July 16, 1888. Writ dated August 2, 1888. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, which appear in the opinion.

*A. E. Pillsbury & W. B. Lawrence,* for the plaintiff.

*A. J. Bailcy,* (*R. W. Nason* with him,) for the defendant.

DEVENS, J.    The plaintiff was duly appointed by the mayor and aldermen of Boston a police officer of the city, and was duly sworn and qualified on June 21, 1871, and thereafter performed the duties of such office until October 21, 1878. On October 11, 1878, he received a request in writing for his resignation, in view of the reorganization of the police department, to take effect on October 21, to which he replied, desiring to know the cause of

the request, remonstrating against the same, desiring to know what charges had been preferred against him, and, if any, asking a hearing. On October 19, by a vote of the police commissioners, he, with others, was removed without a hearing, the removal to take effect on October 21, 1878, upon the reorganization of the department. This vote was communicated to the plaintiff on October 20, and he continued to perform his duties until after the evening roll-call of that day, when he was ordered to deliver up, and did deliver up, " the buttons and badge of his office, and all other city property in his possession." The plaintiff has never resigned his office, nor has there been any other communication between him and the police commissioners. Although ready and willing, he has been prevented from performing the duties of his office as a member of the police force of the city of Boston, and has never since been assigned to duty by the commissioners, nor has he performed, or attempted to perform, any act of police duty. On August 2, 1888, this action, which is one of contract, was brought against the city, wherein the plaintiff claims the full salary which would have become due to him had he performed his duties as a member of the police force during the time of nearly ten years which has intervened since his removal from and surrender of his office. His contention is that he has always continued during this period to be lawfully a member of the police force; and that, as incident to his lawful title and to his right to the possession of his office (of which possession he has been wrongfully deprived) he may recover from the city the salary provided by its ordinances for such an office.

We shall assume, without deciding, in favor of the plaintiff, that it was not within the legal powers of the board of police commissioners created by the act of 1878 summarily to remove the plaintiff from his position as a member of the police force of the city of Boston without definite cause assigned and without a hearing. St. 1878, c. 244, § 3. *Ham* v. *Boston Board of Police*, 142 Mass. 90. *O'Dowd* v. *Boston*, 149 Mass. 443. But that the proceedings of the commissioners together with the acts of the plaintiff actually operated to remove the plaintiff, so that, even if he was still a police officer *de jure*, he ceased to be one *de facto* during this period, can hardly be questioned. He was not an

incumbent of the office in any such sense as is one who performs its duties.

Whether the salary of a public office is strictly an incident of the title, so that a *de jure* officer, although he has been actually removed therefrom, may still maintain an action against the person or corporation originally liable therefor; whether his only remedy is by action against the officer *de facto* who has received it, or against those by whom he has been wrongfully kept out of possession; and whether in order to entitle one to receive the salary attached to an office, it is necessary that he should not only have a title thereto as of right, but should also exercise the office, — are questions upon which the authorities in America are numerous and conflicting. It probably would not be possible to reconcile them, although the decision of many has undoubtedly depended upon the statutes of the States in which they have been made. *Andrews* v. *Portland*, 79 Maine, 484, 491. *Stuhr* v. *Curran*, 43 Am. Rep. 353, 361–365, note. 1 Dillon, Mun. Corp. § 235, note.

We shall not have occasion to examine these cases, or analyze them, as we are of opinion that, upon the facts as they appear in the case at bar, it must be held that the plaintiff abandoned the office of a member of the police force, and waived all claim thereto, so far at least as to relieve the defendant city from any duty to pay him his salary. If one voluntarily relinquishes an office, as if he accepts another inconsistent therewith, or if he removes from the place where its functions must be exercised, no formal resignation would be necessary. If, having it in his power to reinstate himself, or be reinstated by proper proceedings, in an office from which he has been wrongfully but actually removed, and he makes no effort to that end, but submits for a long term of years to the removal, the inference is inevitable that he waives his right thereto during that period. In the case at bar, the plaintiff yielded to the demand made upon him for the badge of his office and the city property in his possession. He made no effort to retain them, nor did he insist that he might rightfully do so as the lawful possessor thereof. While it is found that he was prevented by the commissioners from further performing his duties as a member of the police force of the city, it is also found that he neither performed nor

attempted to perform any act of police duty. At no time by any formal demand did he ever assert (so far as appears) that he was of right a member of the police force, or claim to be put on duty as such by the commissioners, nor did he demand his salary as such from the defendant. While the failure to pay it might not be a bar to its recovery, except so far as the statute of limitations might operate, the failure to demand it tends strongly to show that he had ceased to consider himself a police officer.

If his removal was unlawful, it was in his power to bring up the proceedings of the board by petition for certiorari, by which its action could have been quashed and the petitioner afterwards restored by mandamus to his public office. It was his duty to initiate this promptly, and not to wait, and seek, after ten years of apparent acquiescence, to maintain that during all this time he was of right entitled to a public office in which he made no effort to be reinstated, and the duties of which he did not attempt to perform.

It was especially the duty of the plaintiff to seek to be reinstated in his office by formal demand, and, if necessary, by appropriate legal proceedings, in view of the peculiar relation in which he stood to the defendant, of which he now seeks to avail himself. There was no contract, properly speaking, between himself and the city of Boston, by which it had engaged to pay his salary. He was essentially a State officer, appointed to preserve its peace and to execute its laws as well as the ordinances of the city. He was not an officer of the city. After the reorganization of the police force, in October, 1878, such an officer was not appointed by the city, or by any of its governing boards, nor was he removable by them. Upon the city was imposed by law the duty of paying these officers, although they were not controlled by it, as the Legislature held this to be a proper mode of distributing the public burden. With the plaintiff's removal, neither the city nor any of its officials had anything to do. If he intended to hold the city responsible for the obligation imposed upon it, we may assume, because his office was to be executed within its limits, that he should have made some effort to be reinstated in the actual possession of the office, in order that he might discharge the duties by the performance of which the city perhaps more immediately than the rest of the

Commonwealth would be benefited.   When he did nothing of this kind, when he did not even demand his salary from the city, to permit a claim of this nature to be accumulated against it for ten years would be unreasonable.   In view of . all the circumstances, we must hold that the plaintiff abandoned his office, and waived all claim to it.

*Judgment for the defendant affirmed.*