LOUIS J. GALVIN *vs.* ST. PAUL CITY.

JOHN P. WALSH *vs.* SAME.     •

Argued by appellants, submitted on brief by respondents, July 12, 1894.   Reversed Aug. 16, 1894.

Nos. 8814, 8815.

**St. Paul city charter, provision for removing policemen.**

Under the charter provisions of the city of St. Paul (Sp. Laws 1887, ch. 48, § 12), the removal of a policeman by the mayor does not become effectual, so as to deprive him of his right to compensation, until the

act of the mayor is concurred in by a majority vote of all of the members of the city council.

**Effect of surrender of insignia of office.**

That a removed policeman, upon the demand of the mayor, surrenders to his chief his insignia of office and other public property, does not, of itself, deprive him of his right to such compensation.

**St. Paul city charter provision as to salary of policemen.**

But the right of action to recover the same does not arise until the council has fixed the amount of his salary, as required by Sp. Laws 1891, ch. 9, § 1.

Appeal by defendant, the City of St. Paul, from a judgment of the District Court of Ramsey County, *William Louis Kelly,* J., entered February 20, 1894, against it and in favor of plaintiff, Louis J. Galvin, for $650.64.

Appeal also by defendant, the City of St. Paul, from a judgment of the same court entered the same day against it and in favor of plaintiff John P. Walsh for a like amount.

Each of these plaintiffs was serving on the police force of the City of St. Paul, September 6, 1892, and had been serving for a considerable time. They were receiving pay at the rate of $75 per month. On that day the mayor of the city dismissed each of them for cause from the service, took away their badges and ordered them to deliver up all city property in their possession. The mayor on the same day sent to the common council notice of these dismissals, but the board of aldermen did not act upon them until May 16, 1893, when they concurred. Each plaintiff then brought an action against the city to recover pay for the eight months and ten days intervening time at the rate of $75 per month alleging that he had been ready and willing during all that time to perform duty as policeman. The court made findings of these facts and ordered judgment for each plaintiff. The judgments were entered and the city appeals. The cases were argued together here.

*Leon T. Chamberlain,* for appellant.

*McCafferty & Noyes,* for respondents.

COLLINS, J.    1. By the charter of the city of St. Paul (Sp. Laws 1887, ch. 48, § 12), the mayor is given the power to remove any officer

·or member of the police department, "provided, that such removal shall not take effect until notice thereof is given to the common coun·cil and the action of the mayor is concurred in" by a majority of all members of said council.  This proviso is perfectly plain, and plaintiffs' removal did not become effectual, so far as their right to recover in these cases is concerned, until the mayor's action was concurred in by the board of aldermen, May 16, 1893.  That the plaintiffs, when removed by the mayor, surrendered all insignia of office and other public property to their chief cannot, of itself, be allowed to .affect their right to recover, for it appears that this was done on ·demand of the mayor.  They simply obeyed his orders, as was the proper thing for them to do, and for this regard of higher authority they should not be made to suffer.

2. By Sp. Laws 1889, ch. 418, § 1, the salary of each policeman of the city of St. Paul was fixed at $75 per month.  By Sp. Laws 1891, ch. 9, § 1, it was enacted that the salaries of all policemen, save the ·chief, should be fixed by the common council, but in no case should such salaries exceed those already provided by law for like services. This was equivalent to saying, in so many words, that salaries of policemen were to be determined by the council, but should not exceed $75 per month.

3. By resolution approved May 7, 1891, the council fixed the salaries of policemen doing patrol duty at $75 per month for the year commencing May 1, 1891; but there was no further resolution or .action of the council, except as it approved and allowed monthly pay rolls, plaintiffs' names not appearing thereon after the action of the mayor.  The law of 1891 was designed, we think, to impose on the city council the duty of fixing salaries; the evident intention being that this should be done in an orderly way, and by resolution, at the beginning of each administrative year.  This has not been done, ·except for one year ending long before the commencement of the time for which plaintiffs claim they are entitled to pay.  We do not think the law is open to the construction claimed for it by plaintiffs' counsel,—that, if the council fails to act in accordance with its provisions, their salaries are to be determined by the statute of 1889. It follows that, until the council takes steps to determine policemen's salaries for the year in question,—and it has the undoubted

right to do this now,—an action to recover cannot be maintained. Judgment reversed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 1102.)