R. A. Brown, Executrix, v. Galveston Wharf Company.

No. 762.   Decided March 13, 1899.

**1. Corporation—President—Acting President—Salary.**

The vice-president of a corporation, who in the absence of the president performs the duties of the latter in accordance with by-laws of the corporation providing that he shall do so, is not entitled to recover for such services the salary allowed by the by-laws to the president therefor, in the absence of any provision by the corporation for compensation for his services as such acting president. (P. 524.)

**2. Same—Failure of President to Perform Duties.**

The president of a corporation whose annual salary was fixed by its by-laws was entitled to recover such salary so long as he remained president, though incapacitated from performing the duties of his office and absent from the State. (Pp. 524, 525.)

**3. Same.**

The salary of an officer of a private, like that of a municipal corporation, is an incident to his office, not dependent on contract nor subject to deduction for breach of contract to perform the duties of such office. (P. 524.)

Error to the Court of Civil Appeals for the First District, in an appeal from Galveston County.

Suit by R. A. Brown, executrix, against Galveston Wharf Company, in which Leon Blum intervened and plaintiff appealed from the judgment rendered. The appellate court, on cross-assignments by the intervener, having rendered judgment in his favor, appellant obtained writ of error.

*Spencer & Kincaid,* for plaintiff in error.—While sickness might have been ground for the removal of the president, still when his absence on that account was expressly permitted by the company, he was entitled to compensation during such absence, or until some action on the part of the company was taken on the subject. Finley v. Finley, 32 Atl. Rep., 742; O'Leary v. Board of Education, 93 N. Y., 1; Sleigh v. United States, 9 Ct. of Cl., 369; Ware v. United States, 7 Ct. of Cl., 565.

That plaintiff was entitled to recover the salary, see authorities supra and Waterman v. Railway, 15 Law. Rep. Ann., 418. That Leon Blum was not entitled to it, see 1 White & W. C. C., sec. 75; 17 Am. and Eng. Enc. of Law, 119; 4 Thomp. on Corp., 4682; 3 Id., 4380.

In private as well as in public corporations the salary annexed to an office follows the legal title to the office, and where one is elected to an office in a private corporation to which a salary is annexed he is, in the absence of a dismissal by the governing body, entitled to recover the salary annexed to the office without regard to the performance of the duties of said office. Waterman v. Railway, 15 Law. Rep. Ann., 418; Finley v. Finley, 32 Atl. Rep., 742; O'Leary v. Board of Education, 93 N. Y., 1.

*Terry & Ballinger,* for Galveston Wharf Company.

*Scott, Levi & Smith,* for Leon Blum.—It is immaterial for the purposes of this case whether the leave granted was for one period or another, or whether it was fixed or indefinite. The president's salary was reasonable compensation for services to be rendered by him in that capacity. The proof and finding was that Brown rendered no such service during his absence nor after his return, and all claim for salary on his part is avoided by these facts. Blum, during the same time, performed all the duties of president under the requirements of his office, and earned and was entitled to the salary. The leave of absence granted Brown meant no more than that on his return, during his term of office, he could resume its functions, honor, and emoluments. During his absence Blum became and continued to be full president in right of his election of vice president and the vacancy created by Brown's absence and inability. Corporate officers can not claim compensation for services rendered unless by agreement. Mora. on Corp., sec. 508. But when compensation is stipulated, he becomes entitled to it as quid pro quo. Such compensation, no matter by what name it is called, is based on the rendition of services. "Salary," "wages," etc., are of the same nature, and (like the terms consul, minister, ambassador, etc.) differ only in the grades of employment to which they are applied. 28 Am. and Eng. Enc. of Law, title "Wages," pp. 513-515; Bell v. Live Stock Co., 11 S. W. Rep., 346. Contracts must be mutual; performance of service is essential to claim for compensation, as claims for compensation follow upon performance of service. Performance of contract excused when prevented by inevitable accident, but obligation to pay for performance rests not only on the obligation to perform (which may be so excused), but upon actual performance. Mounsey

v. Drake, 10 Johns., 27-29; People v. Manning, 8 Cow., 297; Beebe v. Johnson, 19 Wend., 502. Where there is part performance and legal cause for nonperformance of the rest of the obligation, the contract will be apportioned and compensation awarded as upon quantum meruit, the contract furnishing the rule of value. 14 Am. and Eng. Enc. of Law, title "Master and Servant," especially clause (f), p. 780, and note 4; Dunlap v. Montgomery, 16 Atl. Rep., 41; 2 Pars. on Con., 33; Vice President is he who "in turn" is president; Encyclopaedia Dictionary; U. S. Const., art. 2, sec. 1, clause 6.

In an additional brief and argument counsel cited also: 19 Am. and Eng. Enc. of Law, 525, et seq.; 17 Id., 168; 1 Id., 1108bb; Wolfe v. Howes, 20 N. Y., 197; Dickey v. Linscott, 20 Me., 453; Clark v. Gilbert, 26 N. Y., 279; Lakeman v. Pollard, 43 Me., 463; Ryan v. Dayton, 25 Conn., 188; Greene v. Linton, 7 Porter, 133; Hillyard v. Crabtree, 11 Texas, 264; Ferry Co. v. Terbill, 48 N. Y., 427; Stafford v. Railway, 60 Vt., 185; McVeany v. Mayor, 80 N. Y., 185. In support of a motion for rehearing, which was overruled, they cited also: Chadwick v. Earhart, 11 Ore., 389; People v. Hopkins, 35 N. Y., 74.

BROWN Associate Justice.—R. A. Brown, the executrix of J. M. Brown, deceased, brought this suit against the Galveston Wharf Company to recover of it a balance of a salary claimed to be due by the wharf company to J. M. Brown, as president of the said company, from February 1, 1895, to December 25, 1895. The wharf company pleaded that during the time for which the plaintiff sought to recover the salary of J. M. Brown, he was, on account of illness, incapacitated from performing his duties as president of the company and was absent from the State for several months during the time. That the duties of president were discharged by Leon Blum, who was vice-president of the company, during the illness and absence of J. M. Brown. Leon Blum intervened in the suit and claimed that the salary was due him as acting president during the said time. The trial court gave judgment for the plaintiff, R. A. Brown, for the sum of $1390.62, with 6 per cent interest from date, and in favor of Leon Blum for $1534.87, which judgment the Court of Civil Appeals reversed and rendered judgment in favor of Leon Blum against the wharf company for the whole amount.

The following conclusions of fact were found by the Court of Civil Appeals:

"The charter and by-laws of the corporation created the offices of president and vice-president, who were elected annually in January upon the organization of the board of directors, who were elected annually by the stockholders in that month, and the salary of the president was fixed at $3000 per annum. J. M. Brown had been president of the company since 1889. The duties of the president and the vice-president were defined in by-laws Nos. 6 and 7, as follows:

" 'By-law No. 6. It shall be the duty of the president to preside at all meetings of the board, and to see that its orders and resolutions are duly

complied with and executed; to call special meetings of the board of directors whenever he shall think proper; and to perform such other duties as may be devolved upon him by the board of directors.

" 'By-law No. 7. It shall be the duty of the vice-president, in the absence of the president, to preside at the meetings of the board; in case of the absence, death, sickness, or other inability of the president, he shall exercise the powers and discharge the duties of that officer until he returns to duty, or other provision is made therefor by the board of directors.'

"On February 2, 1895, J. M. Brown, who had been re-elected president in the month of January next previous thereto, on account of ill health, asked for a leave of absence, which was granted by the company, and on the next day he left for Paterson, N. J., for treatment for malignant cancer. He was absent from the State until October 25, 1895, when he returned home. He died December 25, 1895. It appears conclusively from the mass of the testimony adduced on the trial below that J. M. Brown did not discharge any of the duties of the office of president after February 2, 1895; but that these duties were discharged by the vice-president of the company, the intervener, Leon Blum. The company paid the salary up to February 1, 1895, to J. M. Brown, but after that time did not pay it to anyone. From the resolutions entered in the minutes of the board of directors, it appeared that an indefinite leave of absence was granted, but from parol evidence heard over objection by the appellant, it was shown that the leave asked for and granted was in fact for six weeks. The leave was never revoked, and no action was ever taken by the company with respect to the continued absence and illness of its president. In response to the motion of the appellant, we find the following additional conclusions of fact:

"J. W. Brown was twice absent from the State during the time he was president of the wharf company in previous years for about two months at a time, and his salary as president was paid during the time of said absences. It appeared that the first absence was by leave of the directors. Leon Blum was vice-president of the company from 1890 to 1895, except the year 1891, and was an active director therein. As stated in the conclusions before filed, J. M. Brown was suffering from a malignant cancer, from which he finally died; he had been suffering with cancer for a number of years and had had several surgical operations performed therefor during the time. His absences were for the purpose of securing treatment. He had continued in the full discharge of his duties as president of the wharf company from the time that he was first elected in 1889 until the leave of absence was granted in 1895, with the exception as above stated. After his return in October he was unable to discharge the duties of the office. His application to the finance committee was for a leave of absence for six weeks, but it was written upon the minutes thus: 'The president asked for and was granted an indefinite leave of absence.' This minute or entry was subsequently read and approved by the full board of directors at their next regular meeting. The wharf

company had had other presidents, but J. M. Brown was the only president to whom it had ever paid a salary."

Counsel for Leon Blum, the intervener in this case, rest his right to receive the salary provided for the president of the corporation upon the rule by which contracts are apportioned in proportion to the extent of their performance. Resting their claim upon this ground, they assert that Blum, having discharged the duties of president for a given time, is entitled to the salary of the president for that time at the rate of $250 per month, the salary being fixed at $3000 per annum. We are of opinion that the case is more analogous to that of a public office, and that we must determine the controversy between the parties by the principles of law which would be applicable if J. M. Brown had been an officer of a municipal corporation instead of a private corporation.

Blum's right to recover in this case depends upon whether or not any provision had been made by the wharf company for paying him a salary in lieu of the salary to the president for services rendered by him in the absence of the president of the company. The by-laws copied in the statement of facts show that no provision was made for the vice-president of the corporation to be remunerated for his services in acting as president. Under these circumstances Blum was not entitled to compensation for the performance of the duties of president. 4 Thomp. on Corp., sec. 4682.

The by-laws of the corporation fixed the salary of the president at the sum of $3000 per annum and made no provision for any deductions from it for absence or any failure to perform the duties of the office. We regard the controversy over the leave of absence granted as immaterial in this case, for in our view of the facts, the president, J. M. Brown, being duly elected and installed in the office of president of the Galveston Wharf Company, was entitled to draw the salary for that year unless he died or was removed from the office during the time. So long as he remained the president of the company, the salary was an incident to the office and ran with it for the whole time, although he may have failed to perform the duties of president for any given part of such time. Beard v. City of Decatur, 64 Texas, 7; Fitzsimmons v. City of Brooklyn, 102 N. Y., 536; Mayor, etc., v. Woodward, 12 Heisk., 499; People v. Smyth, 28 Cal., 21; Carroll v. Siebenthaler, 37 Cal., 193.

In Fitzsimmons v. City of Brooklyn, plaintiff sued for his salary as a policeman for a period of time in which he was illegally removed, and the city sought to apply the principles applicable to a breach of contract, claiming a credit for money earned by him during his removal. After stating the rule, the court said: "But this rule of damages has no application to the case of an officer suing for his salary, and for the obvious reason that there is no broken contract or damages for its breach where there is no contract. We have often held that there is no contract between the officer and the State or municipality by force of which the salary is payable. That belongs to him as an incident of his

office, and so long as he holds it; and when improperly withheld, he may sue for it and recover it. When he does so he is entitled to its amount, not by force of any contract, but because the law attaches it to the office; and there is no question of breach of contract or resultant damages out of which the doctrine invoked has grown. We think, therefore, it has no application to the case at bar, and the courts below were right in refusing to diminish the recovery by applying the wages earned."

In the case of State v. Baird, 47 Mo., 301, the court held that an officer who had been duly elected and qualified for a term was entitled to the office during that term, although he may have been for a time disabled from performing the duties of the office, unless the authority empowered by law to do so, for the reason specified by the statute, removed him from office.

We conclude that J. M. Brown was entitled to the salary from the time he was elected to the date of his death, and that the District Court and Court of Civil Appeals both erred in holding that he was not so entitled and in entering judgment for Blum for any part of that salary. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed, and that judgment be here entered that Leon Blum take nothing by his intervention, and in favor of R. A. Brown, executrix of the will of J. M. Brown, deceased, against the Galveston Wharf Company for the sum of $2708.33, with interest at the rate of 6 per cent per annum from January 1, 1896; and it is further ordered that the plaintiff in error, R. A. Brown, executrix, recover of the Galveston Wharf Company all the costs of all the courts, except so much of that cost as may have been created by the intervention of Leon Blum, and that the said plaintiff in error recover of the said Leon Blum all costs chargeable to and arising out of his intervention in this cause. It is ordered that this judgment be certified to the District Court of Galveston County for enforcement, and that the clerk of the said court issue execution thereon according to law.

*Reversed and rendered.*