CHARLES F. BYRNES v. CITY OF ST. PAUL.

November 29, 1899.

78   205<br/>83   478

Nos. 11,821—(92).

**Unlawful Discharge of Police Officer—Compensation.**

> An appointive municipal officer, like a policeman, unlawfully dismissed and prevented from rendering any service, who has made no complaint to the mayor or to the city council, has not attempted to secure a reinstatement, but who has apparently acquiesced in the dismissal, cannot recover of the municipality the compensation incident to the office during the period in which he has performed no service. He must be deemed to have voluntarily abandoned or relinquished his office, or, as it is sometimes expressed, to have "resigned by implication."

Action in the district court for Ramsey county to recover $3,214.-36 alleged to be due to plaintiff as a member of the police force of defendant. The case was tried before Kelly, J., who directed a verdict in favor of plaintiff for $15, being compensation for six days

ending June 13, 1894. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Thompson & Thompson,* for appellant.

The acts of the chief of police could at most have the effect of suspending plaintiff from duty for a reasonable time only, after which he was entitled to compensation till he ceased to make effort to be assigned to duty. Galvin v. St. Paul City, 58 Minn. 475. Under our statute a de jure police officer is entitled to compensation if able and willing to perform his duties; and in the absence of statute the better rule is that one having the legal right to a public office, but not in possession of it, is entitled to the salary; and payment of the salary to one in possession without title will not prevent one having title from recovering. People v. Smyth, 28 Cal. 21; People v. Oulton, 28 Cal. 45, 52; Burke v. Edgar, 67 Cal. 182, 184; People v. Potter, 63 Cal. 127; People v. Tieman, 8 Abb. Pr. 359, 361; State v. Carr, 129 Ind. 44; Fitzsimmons v. City, 102 N. Y. 536; Andrews v. City, 79 Me. 484, 490; Elliott, Mun. Corp. § 269; Tiedeman, Mun. Corp. § 79. The doctrine that a police officer may be entitled to compensation without having rendered services has been recognized in Yorks v. City of St. Paul, 62 Minn. 250; Galvin v. St. Paul City, supra. See Gregory v. Mayor, 113 N. Y. 416.

*James E. Markham,* for respondent.

A resignation by implication, or a forfeiture of office, occurs where the incumbent by act or omission clearly indicates an attempt to abandon the office, or disqualifies himself from continuing to hold it. Throop, Pub. Off. § 407. If he makes no effort to be reinstated, having it in his power to be reinstated, the inference is inevitable that he has acquiesced in the removal, and abandoned the office, and waived his right to it. Hagan v. City, 126 N. Y. 643. See Phillips v. City, 150 Mass. 491; Bernard v. Mayor, 27 N. J. L. 412; Throop, Pub. Off. § 510; Wood v. Mayor, 55 N. Y. Super. 230; Terhune v. Mayor, 88 N. Y. 247; Riley v. City, 31 Mo. App. 439. Plaintiff's receipt of compensation for seven days in June, 1894, with other circumstances, works an estoppel. Love v. Mayor, 40 N. J. L. 456.

Under the charter the chief of police had power to suspend plaintiff. No formal order or written direction was essential. Howard v. City, 88 Mo. 656; Westberg v. City, 64 Mo. 493. The suspension continued till revoked or set aside, and plaintiff was not entitled to pay till restored. Wood v. Mayor, supra; Barbour v. U. S., 17 Ct. Claims, 149. The bare holding of office gives no right to receive any amount not fixed by the proper authorities. Throop, Pub. Off. §§ 446, 447; 1 Dillon, Mun. Corp, § 230; Haswell v. Mayor, 81 N. Y. 255; Sikes v. Inhabitants, 13 Gray, 347. See Galvin v. St. Paul City, 58 Minn. 475.

COLLINS, J.

For more than one year prior to June 6, 1894, plaintiff had been a policeman in the city of St. Paul, assigned to duty as a detective, and required to report for service to another police officer, known as "chief of detectives." On that day the chief of police demanded that plaintiff resign from the force, which he refused to do, and continued to report for service as before. June 13 the chief of police met plaintiff at the central station, and, after directing him to turn over his keys and badge (city property) to the desk sergeant, said, "I have no more use for you." In response to the chief's demand, plaintiff immediately delivered the keys and badge to the sergeant. He understood from what was said that the chief intended to discharge him from the service, and omitted to report for duty for a week or 10 days. He then, and frequently thereafter, for about two years, applied to the chief of detectives to be assigned to duty. His applications were refused. He performed no service, and his successor was appointed and served. July 15, 1894, he signed the city pay roll, and received a check for seven days' service, —that being the unpaid time,—and made no claim for anything further. He never took any steps looking toward a reinstatement, never spoke to the chief of police about the matter, never called the attention of the mayor or of the city council to the fact that the chief of police had deprived him of his keys and badge, had refused to allow him to go upon duty, and had attempted summarily to discharge him from the service. He did not assert in any manner that he was still a member of the force. He waited until February 18,

1898, and then commenced this action, claiming the right to recover salary from June 7, 1894, up to February 15, 1898,—three days before the summons was served.

It stands admitted that the chief of police had no authority, under the charter, to dismiss a policeman. This authority rests with the mayor; but, if the officer has held his position for six months immediately preceding a dismissal, it does not take effect until the common council concurs. The action of the chief, when notifying plaintiff that he had no further use for him, was, when taken alone, of no effect. But plaintiff acquiesced in this irregular and unauthorized act. He not only obeyed the order to surrender his keys and badge, which, in itself, was of no particular consequence (see Galvin v. St. Paul City, 58 Minn. 475, 59 N. W. 1102), but he left the station, did not return for a week or 10 days, and, so far as could be judged from appearances, made no objection to the decision of the chief. He acted as if he intended to abandon the office without remonstrance. Later he reported to the chief of detectives, but this officer had no power to restore him to duty, or, if he had been improperly removed, to reinstate him upon the force. He allowed another person to be appointed to his place, to do the work, and to receive the compensation. He failed to notify the mayor that the chief had attempted to dismiss him from the service. He did not inform the city council that he had been improperly discharged, and without its concurrence, or that the chief had refused to allow him to render an equivalent for his salary.

In short, he made no protest or demand, as he might and should have done if, in good faith, he was of the opinion that he was still a member of the police force, and entitled to his pay. It was his especial duty to seek to be reinstated in his office by formal demand, and, if necessary, by appropriate legal proceedings, in view of the peculiar relation in which he stood to the defendant, of which he now seeks to avail himself. When he did nothing of this kind, when he did not even demand his salary from the city, to permit a claim of this nature to be accumulated against it would be unreasonable. An appointive municipal officer, as was plaintiff, unlawfully dismissed and prevented from rendering any service, who has made no complaint to the mayor or to the city council, has not

attempted to secure a reinstatement, but who has apparently acquiesced in the dismissal, cannot recover of the municipality the compensation incident to the office during the period in which he has performed no service. Hagan v. City, 126 N. Y. 643, 27 N. E. 265; Phillips v. City, 150 Mass. 491, 23 N. E. 202; Bernard v. Mayor, 27 N. J. L. 412; Throop, Pub. Off. § 407. The plaintiff voluntarily abandoned and relinquished his office, or, as it is sometimes expressed, he "resigned by implication." This disposes of the case.

Order affirmed