CITY OF SAN ANTONIO v. STEINGRUBER. (No. 5528.) †

(Court of Civil Appeals of Texas. San Antonio. June 9, 1915. On Motion for Rehearing, June 30, 1915.)

1. MUNICIPAL CORPORATIONS ☞165—OFFICERS—SALARY—ACTIONS—DEFENSES.

Where a municipal officer, who was removed from office without warrant of law before expiration of his term, sued for the salary of his office, it is for the municipality to plead and prove that the salary was paid to a de facto officer, and the petition need not in the first instance deny that fact.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 373, 374; Dec. Dig. ☞165.]

2. MUNICIPAL CORPORATIONS ☞162—OFFICERS—SALARIES.

The salary or emolument annexed to a public office is incident to the office and not to its occupation and exercise, and hence, where plaintiff was removed without authority of law, the fact that another discharged his

duties will not deprive plaintiff of the salary attached to the office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

3. MUNICIPAL CORPORATIONS ☞150—OFFICERS—ACTIONS FOR SALARY.

That a municipal officer wrongfully removed did not, before the end of his term, institute proceedings to test the validity of the removal, does not show an abandonment of the office as a matter of law, precluding recovery of salary after the expiration of the term.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 333–337; Dec. Dig. ☞150.]

4. MUNICIPAL CORPORATIONS ☞165—OFFICERS—SALARIES—DEFENSES.

Where no proceeding was brought by an officer of a municipality to test the validity of his removal, an action after the expiration of his term to recover salary incident to the office, cannot be defeated on the ground that it was merely a proceeding collateral to the right to the office, and so could not be maintained until that was adjudicated.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 373, 374; Dec. Dig. ☞165.]

5. MUNICIPAL CORPORATIONS ☞162—OFFICERS—SALARIES.

An officer who was unlawfully removed, and whose place was taken by another, may recover the salary incident to the office, regardless of the ability of the city to recover from the unlawful incumbent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

6. MUNICIPAL CORPORATIONS ☞150—OFFICERS—ABANDONMENT.

Where plaintiff voluntarily turned over his office, though the order of his removal was not valid, thereafter making no claim on the city for salary, although he informed his friends that he was ready to return to the office, and did not during the remainder of his term institute any proceedings to establish his title, there was an abandonment, precluding recovery of the salary incident to the office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 333–337; Dec. Dig. ☞150.]

On Motion for Rehearing.

7. MUNICIPAL CORPORATIONS ☞162—OFFICERS—SALARY.

An officer who discharged no duties cannot recover salary incident to the office because of the defective appointment of his successor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Henry Steingruber against the City of San Antonio. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Geo. R. Gillette and Robert G. Harris, both of San Antonio, for appellant. Ryan, Matlock & Reed and Theodore E. Simmang, all of San Antonio, for appellee.

MOURSUND, J. This is a suit by Henry Steingruber against the city of San Antonio. Thirty-five pages of the record are filled with pleadings, many exceptions being urged by each party, and supplemental pleadings as well as trial amendments being liberally indulged in. For the sake of brevity, we will make a statement from all of the pleadings sufficient to show the issues of fact presented, and will not undertake to show what the exceptions were, until we reach them in disposing of the assignments of error.

Steingruber sued to recover money alleged to be due him as salary accruing to him as park commissioner of the city of San Antonio for the period beginning September 1, 1912, and ending May 31, 1913. It was alleged and admitted that he was duly and legally appointed to such office; that he had the qualifications prescribed by law; that he duly qualified, his commission was duly issued, and he entered upon the discharge of the duties of such office; that all necessary steps were taken to make his appointment legal and to provide for the payment of the salary of the office; that the office was legally created by ordinance, which gave such park commissioner the "direct supervision, control, and direction of all city parks and cemeteries, under the supervision of the mayor," and fixed the salary at $1,500 per annum; that he continued to discharge the duties of the office until about August 30, 1912, when the mayor of said city attempted to discharge him, but that he was not discharged in the manner required by the charter of said city, no written reasons being filed with the city clerk, nor was the mayor's act confirmed by the city council. Plaintiff also made the following allegations, which were denied by defendant, viz.: That he was ready, willing, and able to perform the services of said office until the expiration of the term on June 1, 1913, but that the city refused to accept same, and illegally prevented him from so serving, and that about August 30, 1912, under orders of the mayor, one S. R. Walker forcibly took possession of said office and of the property of the city in plaintiff's possession and under his control as park commissioner, and unlawfully ousted plaintiff therefrom, and defendant took plaintiff's name off of the pay roll of the city.

Defendant made the following allegations, which were admitted by plaintiff, viz.: That plaintiff at no time brought suit for a mandamus to compel the restoration of the office he claims, nor did he at any time file a proceeding in the nature of quo warranto to oust the said S. R. Walker; that plaintiff at no time after his alleged illegal discharge applied to the city auditor for the warrant for his salary of office, each month, such monthly warrant being provided for by section 111 of defendant's charter, effective for the full term of the office plaintiff claims the salary for.

Defendant made the following allegations, upon which issue was joined by plaintiff in

accordance with the statute, viz.: That by reason of the matters above pleaded, plaintiff abandoned and intended to abandon the office; that plaintiff delivered to Walker the possession of the office without demurrer and abandoned the office and any claim thereto; that until the filing of this suit plaintiff has in no way asserted any claim to said office, nor taken any steps to assert his right thereto, but has acquiesced in his discharge and engaged in other pursuits, and by reason of such facts intended to abandon and has abandoned the office, and is not entitled to the salary; that one S. R. Walker was duly appointed by the mayor of defendant city, and the appointment duly confirmed by the city council thereof, to the said office of park commissioner, on August 30, 1912; that immediately thereafter Walker qualified by taking the oath of office, a commission was duly issued to him, and he entered upon the discharge of the duties of the office and continued to discharge the same until the expiration of the term, namely, May 31, 1913; that such appointment was for the portion of the term for which plaintiff claims salary, and said Walker applied monthly to the city auditor and received a warrant for the salary of such office, in the sum of $125; that by reason of the matters so alleged plaintiff is not entitled to recover the salary he sues for, but his action, if any he has, is solely against Walker.

Plaintiff replied with the following allegations, which were admitted by defendant: That on or about August 29, 1912, plaintiff was directed by letter signed by the city clerk to turn over his office to S. R. Walker, but he refused to do so, although the city clerk purported to act for the mayor and under his orders; that thereafter, about August 30, 1912, A. H. Jones, mayor of said city, directed a written communication to plaintiff, stating that he had that day appointed S. R. Walker park commissioner of the city, beginning September 1, 1912, and directing plaintiff to deliver to said Walker all city property in plaintiff's possession or under his control; that such communication was handed plaintiff by Walker; that under the ordinance creating the office held by plaintiff, he (plaintiff) was under the supervision of the mayor, who was the chief executive officer of the city; that pursuant to said instructions plaintiff delivered to Walker the property mentioned; that on or about November 3, 1913, plaintiff served notice on the city, through its clerk, that he demanded and prayed for payment of the salary of such office from September 1, 1912, which petition was refused or ignored. Plaintiff also made the following allegations, upon which issue was joined, viz.: That plaintiff was bound to obey the instructions given by the mayor as aforesaid, and the delivery of the property by him was compulsory; that he protested against the same, and never abandon-

177 S.W.—65

ed the office or any claim thereto, and has continuously asserted his title thereto; that said Walker on August 30, 1912, was, and ever since has been, insolvent; that the appointment and confirmation of Walker, as alleged, if true, was without authority of law for this, that plaintiff was the regularly appointed, qualified, and acting park commissioner of said city, had never been removed legally, and was the de jure officer, and that said alleged appointment of Walker was a trespass, and was fraudulently done for the purpose of illegally ousting plaintiff from said office, and in law constituted a fraud upon the part of said Walker, said mayor, and said city.

Defendant replied with the following allegations, upon which issue was joined, viz.: That plaintiff at no time after his removal until November 3, 1913, gave notice to the mayor, city auditor, or city council in any direct or formal way, or in a manner to actually charge defendant with notice, that he intended to sue for and was claiming the salary for his alleged term of office; that Walker possessed, at the time he was appointed and during the entire term of office, the necessary legal qualifications for appointment to such office; that said Walker's appointment was designated as an appointment to the office of "park inspector," when in fact it was an appointment to the office of "park commissioner," and his confirmation was in fact to the office of "park commissioner," although the confirmation was made to the position designated "park inspector"; that Walker took the oath of office in fact for the office of "park commissioner," although such oath designates the office as that of "park inspector"; that said Walker, for the period of time beginning September 1, 1912, and ending May 31, 1913, performed the duties of the office of "park commissioner"; that Walker received the salary incident to the office of park commissioner for such period of time, and during said time no person, other than Walker, performed the duties of the office of park commissioner, nor received the salary thereof. Defendant also alleged, and it was admitted, that there is no such office as "park inspector" in the city of San Antonio, the city council of said city never having created such office by ordinance.

The court rendered judgment in favor of plaintiff for $1,244.28, with interest from its date at the rate of 6 per cent. per annum.

[1, 2] Appellant contends that the general demurrer should have been sustained to plaintiff's pleadings, because he failed to allege that the salary of the office in question was never paid to a de facto officer occupying and discharging the duties of the said office and receiving the salary incident thereto. We do not think it is necessary for plaintiff to allege that payment of the salary was not made to a de facto officer. If such payment is to be given the effect of releasing the city

from paying plaintiff, we think it would be a matter of defense to be pleaded by the defendant. The first assignment is therefore without merit, but by assignments 9, 10 and 11 the appellant, having pleaded such payment as a matter of defense, contends that the undisputed evidence shows that the salary for the period sued for by plaintiff was paid to Walker, who during said time discharged all the duties of the office, and thus was a de facto officer, and contends further that, in view of such evidence, the judgment is erroneous. Our courts follow the rule that the salary or emolument annexed to a public office is incident to the title, to the office, and not its occupation and exercise. Beard v. City of Decatur, 64 Tex. 7, 53 Am. Rep. 735; Robinson v. State, 87 Tex. 562, 29 S. W. 649; Bastrop County v. Hearn, 70 Tex. 563, 8 S. W. 302; City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S. W. 735; Brown v. Galveston Wharf Company, 92 Tex. 520, 50 S. W. 126.

In said case of Beard v. City of Decatur, it was held that municipal authorities cannot place the money of the city in the hands of the mayor to be by him disbursed, and thereby defeat the right of the treasurer to commissions on money which should have been delivered to him and disbursed by him, and that the treasurer could recover from the city his commissions. The case of Bastrop County v. Hearn was one in which proceeds of a bond issue had been disbursed by the county judge under order of the commissioners' court, and it was held that the county treasurer could recover his commission. In the case of City of San Antonio v. Micklejohn, a city office was attempted to be abolished, but this was not done by ordinance as required by the charter, but merely by resolution, and the officer having offered to continue the performance of his duties, and having continued in possession of the books and records of his office, was held entitled to recover the salary. The case of Brown v. Galveston Wharf Company was one in which it was held that the president of a corporation was entitled to recover the salary of his office, as fixed by its by-laws, so long as he remained president, although incapacitated on account of illness from performing the duties of his office, and absent from the state. No question relating to emoluments was involved in the application for writ of error in the case of Robinson v. State. The court, in discussing the question of dismissing an application because the term of office had expired, stated that it had held in the case of Beard v. Decatur that an officer de jure, who has been illegally ousted, may maintain an action for the recovery of the fees of the office. In none of these cases, nor any others in this state so far as we have been able to ascertain, was the question decided whether payment of the salary to a de facto officer releases the city from liability to the person illegally ousted.

Mr. Dillon, in his work on Municipal Corporations (5th Ed.) § 429, after stating that in many jurisdictions the rule is as contended for by appellant herein, says:

"But the right of recovery under these circumstances is not denied in all jurisdictions. In some it is held that the salary annexed to a public office is incident to the title to the office and not to its occupancy and exercise, and that the right to compensation is not affected by the fact that an usurper—an officer de facto—has discharged the duties of the office and received payment."

In McQuillin on Municipal Corporations, § 518, the statement is made that the rule contended for by appellant has often been applied, but further on in the same section it is said:

"However, the more reasonable rule has often been applied, namely, allowing the de jure officer the salary from the public fund, although it has been received by the de facto officer."

An examination of the cases discloses that, even in jurisdictions in which it is held that the salary is incident to the title to the office and not to its occupancy and exercise, it has been held that payment of the salary to a de facto officer is a good defense to an action by the de jure officer to recover the same salary after he has acquired or regained possession. The courts so holding base their action upon the ground that it is in accord with public policy.

We have considered the cases cited, and conclude that in a case like this the fact alone that the salary is paid to a de facto officer should not affect the rights of the party legally entitled to the office. In a case where the de jure officer is wrongfully ousted, to hold that the mere fact that the salary is paid to a de facto officer should deprive the de jure officer of his right to recover the same, regardless of whether or not such payment was made over his protest and despite reasonable efforts to prevent it, would be unjust, and we do not think such a rule should be announced by our courts. For an interesting discussion of this question see the case of Rasmussen v. Commissioners, 8 Wyo. 277, 56 Pac. 1098, 45 L. R. A. 295. Said assignments are overruled.

[3] Appellant's second contention is that the general demurrer to plaintiff's pleadings should have been sustained, because there is no allegation to the effect that plaintiff instituted judicial proceedings to recover the possession of the office during the term thereof from the alleged illegal intruder therein, and that the said term expired before the determination of such proceedings, which allegation is asserted by appellant to be necessary when there is no allegation to the effect that the salary has not been paid to a de facto officer occupying and discharging the duties of said office. We do not think there is any merit in this contention. The institution of judicial proceedings, or the failure to institute the same, may be considered in deciding whether plaintiff abandoned the of-

fice, but we see no good reason for giving it conclusive effect. If proceedings had been instituted prior to the expiration of the term the city would have derived no benefit, unless such proceedings could have been conducted to a final determination before the term expired. The contention, as made, is an admission that the plaintiff's rights would be preserved if he instituted a suit before the expiration of the term, even though the suit was not finally determined before the end of the term. We cannot see the justice in making the failure to institute legal proceedings conclusive evidence of abandonment, especially when the plaintiff, if he did not succeed in having the case finally determined before the expiration of his term, would have his case dismissed, and thus would be burdened with the payment of costs. McWhorter v. Northcut, 94 Tex. 86, 58 S. W. 720; Riggins v. Richards, 97 Tex. 526, 80 S. W. 524. It would reasonably follow, if such rule should be adopted, that the failure of the person ousted to secure a final adjudication during the remainder of his term, if attributable to his negligence, should prevent him from recovering. Also, that if the remainder of the term was so short as to make it apparent that a final adjudication could not be procured, the suit would be maintainable, for the law would not require the doing of a useless thing. The second assignment is overruled.

[4] The contention made in the third assignment is that this is a collateral proceeding to recover an incident to the title; that it cannot be maintained until there has been an adjudication of the title, or such adjudication has become impossible to procure by reason of the expiration of the term. Such a rule is impracticable in view of the cases cited in disposing of the preceding assignment of error. The assignment is overruled.

The fourth assignment complains of the overruling of a special exception raising the same point discussed in considering the second assignment of error. The failure to institute proceedings to recover the office within the period of time covered by the term of office does not as a matter of law estop plaintiff from recovering the salary, or show a waiver of the right to recover the same, or constitute an abandonment of the office and its emoluments. The assignment is overruled.

The fifth and seventh assignments are without merit and are overruled.

[5] The sixth assignment complains of the overruling of a special exception directed against the allegation that Walker was and is insolvent. This allegation was in direct response to appellant's pleading to the effect that plaintiff's cause of action, if any existed, was against Walker. The allegation, we think, is immaterial, as we think the right to recover the salary is not dependent upon the solvency or insolvency of Walker, but appellant could not have suffered any injury from the ruling of the court. The assignment is overruled.

[6] By the eighth assignment it is contended that the evidence established the fact, as a matter of law, that plaintiff abandoned the office, and therefore he should not have been awarded a judgment for the salary.

Plaintiff construed the communications addressed to him by the city clerk and the mayor as notice that he was removed from the office of park commissioner. This is fully shown by his testimony. He told the city clerk that the discharge would have to be signed by the mayor. On September 1, 1912, he told Walker he would not turn over the office unless he had a written direction from the mayor. After Walker presented the communication from the mayor, stating that he had appointed S. R. Walker "park inspector" of the city, beginning September 1, 1912, and directing plaintiff to deliver to said Walker all city property in plaintiff's possession or under his control, plaintiff did deliver to Walker all such property. It took several days to turn the property over to Walker, said property consisting of tools and animals in the various parks. Plaintiff put in a claim for this time and was paid for the same at the rate of $125 per month. He testified that he thought he received pay for four days. Walker testified, and his testimony is not contradicted, that he and plaintiff got into a buggy and went out together to the parks; that they checked over and took an inventory of the tools, stock, and things of that kind; that he assumed control at that time and has since held the same; that plaintiff introduced Walker to all the men working under him as the man that would take his position; that plaintiff made no protest against turning over the property. Plaintiff admitted that, although his salary was payable monthly and he had always collected the same at the end of the month, he never, after turning over the property to Walker, applied to the city auditor for a warrant for his salary. His explanation in regard to this matter was as follows:

"I knew I was entitled to my salary every month. I didn't think it was necessary to apply for my salary every month because at the end of my term I thought I was entitled to my salary. I thought so because I was appointed for two years. I thought at the end of the term that it would be time enough then to apply for the salary. I expected that at the end of the term I would get all the salary."

He testified that he did not institute judicial proceedings of any kind to recover the office or prevent the payment of the salary to Walker; that he made no protest against his removal to the mayor or city council, and made no application to the mayor or city council for reinstatement. He knew that Walker entered upon the discharge of the duties of the office, and admitted that thereafter he (plaintiff) did not discharge any of the active duties of the office. He did testi-

fy that he went out and looked around to see "how things went on," that he was interested to see how things went on; but did not direct or supervise any of the work after that, and did not offer to do so to Mr. Jones, the mayor.

He also testified as follows:

"After I was removed and received this letter I went up to the city clerk's office almost every day for communications addressed to me, for letters and mail. Before I was removed I always reported to the mayor's office, and to the city clerk's office, too. I reported every day. After Mr. Walker presented that communication I was not up there every day, but very often. I did report to Alderman Richter, who was the mayor pro tem., and to Alderman Mauermann, who was chairman of the finance committee, and to Alderman Wickeland, who was chairman of the committee on parks and plazas. They were all members of the city council at that time. I often talked to them. I reported to Mr. Wickeland, chairman of parks and plazas committee, that I was ready at any time to take the position, and that I would take the office at any time. That always came out in conversations we had about the parks. He was very much interested in them because he was the chairman. I did not meet Mr. Richter every day. I did not go to the city clerk's office every day after Mr. Walker presented the mayor's letter to me, but did go pretty often. I went up the same way as I did before Mr. Walker presented the mayor's letter to me. I asked for communications, mail, and if there was anything new. I was at all times willing, able, and ready to serve the balance of my term."

On cross-examination, he testified he did not know for how long after his discharge he went up to the city clerk's office, but went up there for weeks afterwards, that he could not remember exactly for how many weeks. He also testified that he never attempted to get any orders from Mr. Jones, the mayor, after his discharge, but still considered that he was the legal officer after that time, and that he told Mr. Wickeland, one of the aldermen, and Mr. Richter, alderman and acting mayor, that he was ready to receive orders at any time. He gave as a reason for not applying to Mr. Jones, the mayor, that the latter was awfully busy at that time. He did not testify during what period of time his conversations with said aldermen took place, or how long the mayor was so busy as to prevent him from applying to that official for orders.

Each officer, when he drew his salary at the end of the month, signed his name on the pay rolls of the city opposite a statement showing to whom, for what services, and what amount was paid. These pay rolls showed that plaintiff drew salary and signed the receipt as park commissioner for each month, beginning June, 1911, up to and including August, 1912, and that Walker drew the pay for such office for the period beginning September 1, 1912, and ending May 31, 1913. It was admitted that plaintiff never addressed a written communication to the mayor or city council after his removal and discharge, except the letter dated November

3, 1913, referred to in the pleadings. Said communication was as follows:

"The undersigned was unlawfully discharged as park commissioner on September 1, 1912, and he therefore prays that he is paid his salary as such from that date at the rate of $125 per month."

On September 23, 1912, the city council confirmed various appointments, among them that of S. R. Walker as "park inspector." In the oath of office taken by Walker the office was designated as that of "park inspector." The commission issued to Walker designated the office as that of "park inspector." There was no such office as "park inspector" of the city of San Antonio.

We conclude that the testimony conclusively shows that plaintiff abandoned the office to Walker. He did not ask for his salary for the month of September as park commissioner, but put in a claim for the few days he was engaged in delivering possession to Walker and acquainting Walker with the employés engaged in caring for the parks. It is useless to contend that he merely delivered the property to Walker because Walker had been appointed "park inspector" and the mayor had ordered him to deliver the property to Walker. In other words, to contend that he made the delivery in the belief that he was being shorn of some of his duties, but not of his office. He understood that he was being discharged, that Walker was to have his office, and, as is indicated by the pleadings, he doubtless never realized until long after his term expired that Walker's appointment read "park inspector" when it should have read "park commissioner." It is immaterial on this question of abandonment what effect is to be given in law to the mistake in designating the office in making Walker's appointment. Appellee ceased the performance of the duties of the office. He ceased to demand his salary, which was payable monthly; he did not seek to prevent the payment of same to Walker, or to protest against such payment. He never notified the mayor or the city council that he did not consider himself discharged. It is true that he reported to three of the aldermen who voted against the confirmation of Walker's appointment that he was ready to receive orders at any time. He also told one of them, who was chairman of parks and plazas committee, that he was ready to take the office at any time. The time when these conversations took place is not given. He did testify to going to the city clerk's office for mail and communications for weeks after his discharge, but could not tell how many weeks. Walker's appointment was not confirmed until three weeks after it was made by the mayor, and then by the mayor voting off a tie, so it is probable that plaintiff was hopeful that he might get an opportunity to "take the office," and during said time assured his friends among the aldermen that he was ready at any time to take the position. His

testimony fails to show that he communicated to any one the fact that he regarded himself as still in office and entitled to the salary. The position taken by him, to the effect that he still considered himself as an incumbent of the office of park commissioner is the result of an afterthought, having its origin in the discovery, after his term expired, of the fact that his discharge was made irregularly because not confirmed by the council, or else it is clear that he intended all along to wait until after his term expired, and then try to collect nine months' salary without performing any services, and without taking any steps which would put the mayor or city council upon notice that, if his discharge was not confirmed by the council, he would claim salary. If, after abandoning the office to Walker, he changed his mind, and decided that his act in doing so was induced by mistake, and that he intended to try to take back his office, or try to be reinstated, he failed to notify the mayor, who had the supervision of his department, or the city council, and his vague statements concerning his visits to the clerk's office for weeks and the expression to two of the aldermen of his willingness to take the office, are insufficient to show notice to the city that he regarded his discharge as illegal, and that he intended to claim the salary.

We conclude that the evidence conclusively shows such an abandonment of the office as precludes appellee from recovering the salary thereof. In support of this conclusion we cite: Phillips v. City of Boston, 150 Mass. 491, 23 N. E. 202; Byrnes v. City of St. Paul, 78 Minn. 205, 80 N. W. 959, 79 Am. St. Rep. 384; Healy v. Partridge, 75 App. Div. 511, 78 N. Y. Supp. 392; Cote v. City of Biddeford, 96 Me. 491, 52 Atl. 1019, 90 Am. St. Rep. 417; Wardlow v. Mayor, City of New York, 137 N. Y. 194, 33 N. E. 140.

In coming to this conclusion we do not overlook the fact that the trial court found in favor of plaintiff upon this issue, but the evidence to our minds so conclusively establishes abandonment of the office, that we are satisfied the judgment was wrong, and that it should be set aside.

The judgment is reversed, and judgment rendered in favor of appellant.

### On Motion for Rehearing.

The contention is made in appellee's motion for rehearing that this court is inconsistent in overruling the assignments relating to exceptions to the plaintiff's pleadings, and then sustaining the assignment wherein it was contended that the facts showed abandonment of the office. In order to show this supposed inconsistency to exist appellee takes as true the contentions made by appellant in regard to the pleadings of appellee. We were fairer to appellee and took his pleadings as they actually existed, and not appellant's conclusion, in regard to the effect which should be given to particular paragraphs thereof,

and, applying the special exceptions, held that the pleadings were not subject to such exceptions. Appellee pleaded with great care that Walker forcibly took possession of the office and the property in plaintiff's possession, and that the delivery of the property by him to Walker was compulsory, and that he protested against the same, and never abandoned said office. We held that such allegations did not show abandonment and overruled the special exceptions. But the undisputed evidence showed that plaintiff made no protest, that the delivery was not compulsory, and that Walker did not forcibly take possession of the office and the property appertaining thereto, but, on the contrary, plaintiff went with Walker and turned over to him all the property, introduced him, as his successor, to all the men working in his department, and applied for and received pay for the time spent by him in turning over his office and the property to Walker. There is nothing inconsistent in sustaining the overruling of the exceptions to plaintiff's pleadings which negative all idea of acquiescence on the part of plaintiff, and sustaining the assignment of error directed at the evidence which wholly fails to sustain such allegations.

Appellee stresses the fact that Walker's appointment reads "park inspector," and seems to think that the statement of Fries establishes conclusively that no mistake was made in this matter. Fries testified that it did not occur on account of any clerical mistake made by him, but it is evident that it did occur on account of a mistake made by some one. Neither the mayor nor council was attempting to create a new office, but Walker was put in charge of the office of park commissioner, received the salary of said office, and discharged the duties thereof, and in his amended original petition appellee alleges that Walker forcibly, under order of the mayor, took possession of the office of park commissioner, and ousted plaintiff therefrom. This pleading is strangely inconsistent with the theory now advanced that plaintiff merely gave up the property to a person appointed to a different office. Appellee, at the time he filed his pleadings, appeared to regard the question of abandonment of the office as a very vital one, but now contends that, regardless of his conduct as shown by the evidence, which flatly contradicts his pleadings, he did not abandon the office because a mistake was made in naming the office in Walker's appointment, commission, and oath of office. He contends that the question of abandonment is one of intent, and yet seeks to protect himself from his voluntary acts, which show that intent, by invoking the aid of something which it is clear he did not know at the time of his acts, nor when he filed his original petition, namely, that the office was designated as that of "park inspector" instead of "park commissioner" when Walker was appointed.

[7] He contends that, as a resignation would not be effective until a successor was appointed and qualified, abandonment, which is a species of resignation, could not take place because of the mistake made in designating the office to which Walker was appointed. We are cited to no case which holds that an officer who resigns could recover salary for a long period of time because of irregularities in the appointment of his successor, and we do not believe that had appellee handed in his resignation he could have collected salary for nine months in which the duties were being performed by Walker, even though an error was made in designating the office to which Walker was appointed. The cases relied upon hold that an officer whose resignation is accepted is not released from the discharge of the duties and responsibilities of his office until his successor is appointed and qualified. The public has a right to have the duties of the office discharged, but when another person takes charge of the office and performs the duties thereof, and his occupancy of the office is of such character as to protect the public, we see no reason why irregularities in making the appointment, though of a character to prevent his recovery of the salary by suit, should inure to the benefit of the man who has given up the office and entitle him to recover unearned salary.

Appellee contends that additional testimony can be procured, that the aldermen with whom he conversed can be put upon the stand, and therefore the case should be remanded instead of judgment being rendered by this court. Appellee abandoned the office to Walker according to his own testimony and according to the testimony of Walker, which he did not dispute, although having ample opportunity to do so. After abandoning it he failed to take any steps to recover the office or to prevent the payment of the salary to Walker, and did not even protest to the mayor himself, or notify the mayor or the council that he intended to claim the salary. He does not contend that he even told any alderman he would claim the salary, but he did tell some of them he was willing to take the office. His plea that the mayor was "awfully busy at the time" is unworthy of attention. Surely he could have seen the mayor if he had tried, but he does not contend that he ever demanded an audience. Nine months passed by without a verbal or written protest by him to either the mayor or the council. He waived all irregularities in his discharge and in the appointment of his successor, and, under his own testimony, should be estopped from recovering salary, and we see nothing to be gained by having the aldermen with whom he conversed either corroborate or deny his testimony that he told them he was willing to take the office.

Appellee has requested that additional find-ings of fact be made. We regard this as unnecessary. In fact, most of the additional findings requested to be made relate to matters not shown in the statement of facts, but based upon pleadings and charter provisions.

The appellee's motion for rehearing, supplemental motion for rehearing, and motion to correct findings of fact, are overruled; also the appellant's motion for rehearing.