MINNIE SHINNERS v. CITY OF ST. PAUL.[1]

June 14, 1940.

No. 32,372.

*Oscar Hallam,* for appellant.
*John W. McConneloug* and *H. J. Flynn,* for respondent.

[1]Reported in 292 N. W. 621.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order denying her motion for new trial.

This is another teacher's salary case. The facts are not in substantial dispute and may be thus summarized: Plaintiff is a qualified teacher and had been employed as such in the public school system of St. Paul since November, 1921, until in the spring of 1932, "when the preference cards go out for teachers to sign" and she was not given any such by the principal but told that she should see Superintendent Hartwell. She did so.

"I talked over the matter with him, giving him the term of years I had served and he said I had given very good service and if I had a contract I would have been retained, but on account of when I came in, there was a clause in the city charter at that time that if a teacher was married and her husband living, she couldn't receive a contract."

Thus matters rested until the following August, when she received a letter from Mr. Hartwell pursuant to his promise that he would write her. Immediately thereafter she interviewed him. What was said may be related in her own words:

"He regretted very much but under the present circumstances, on account of discharging so many on the same grounds, that they didn't have a contract with the city, a written contract, that he couldn't retain me."

She next called upon Commissioner Pearce, "and we talked over the situation and he said, 'I have no money to pay you and cannot ask you to teach without pay.'" In March, 1933, one of the teachers informed her that "there was a decision made" by virtue of which "teachers who had been a long while employed * * * would be reinstated." She saw Mr. Hartwell the next day, "and he said, 'I am very sorry, Mrs. Shinners, I believe we have worked a great injustice by dismissing you.' I said, 'How about my position and being reinstated?' He then said he would have the matter looked up immediately and give me a contract and I would be reinstated next September, which he did."

Plaintiff was accordingly reëmployed in September, 1933, and ever since has continued to teach. This action was commenced in July, 1938, more than five years after the alleged breach of the contract upon which it is founded. The court was of the view that plaintiff, having "made no further protest to the superintendent of schools, the commissioner of education, or any other officer of the city," and having "made no demand for immediate reinstatement," thereby "acquiesced in the plan for her reinstatement in September, 1933"; that during the school year 1932-1933 "another teacher performed the work that plaintiff would have done had she remained on the school pay roll, and that this teacher was paid the salary that would have been paid to plaintiff" if she had been permitted to function. Upon these facts the court concluded that she should take nothing, and dismissed her cause with costs and disbursements to defendant.

Plaintiff's claim is that her discharge being without authority and she being ready, willing, and able to teach she was thereby deprived of her income during the school year 1932-1933.

■ As we have seen, the court considered her conduct as amounting to an acquiescence in the mentioned plan of the school authorities. So, giving plaintiff every legal right, there was obviously a fact issue to establish. As stated in Gude v. City of Duluth, 144 Minn. 109, 110, 174 N. W. 614:

"Whether he acquiesced in the action of the head of the department in so excluding him from the service, and whether he abandoned the position held by him, were questions of fact for the jury, and the verdict in his favor thereon is not opposed to the weight of the evidence."

And that is the situation here.

■ We think Byrnes v. City of St. Paul, 78 Minn. 205, 208, 209, 80 N. W. 959, 79 A. S. R. 384, settles the question. Here, as in that case (substituting the feminine for the masculine pronouns), plaintiff—

"made no protest or demand, as he might and should have done if, in good faith, he was of the opinion that he was still a member of the police force, and entitled to his pay. It was his especial duty to seek to be reinstated in his office by formal demand, and, if necessary, by appropriate legal proceedings, in view of the peculiar relation in which he stood to the defendant, of which he now seeks to avail himself. When he did nothing of this kind, when he did not even demand his salary from the city, to permit a claim of this nature to be accumulated against it would be unreasonable. An appointive municipal officer, as was plaintiff, unlawfully dismissed and prevented from rendering any service, who has made no complaint to the mayor or to the city council, has not attempted to secure a reinstatement, but who has apparently acquiesced in the dismissal, cannot recover of the municipality the compensation incident to the office during the period in which he has performed no service." (Citing cases.)

Order affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.