OLAF LARSEN v. CITY OF ST. PAUL.[1]

June 14, 1901.

Nos. 12,593—(148).

### City of St. Paul—Sergeant of Police.

Under the provisions of the charter of the city of St. Paul (Sp. Laws 1887, c. 48, § 12) it is not necessary that an appointee to the office of sergeant of police shall possess the requirements therein mentioned for a "policeman, patrolman, and police officers."

### Consent of Council to Appointment.

In order to consent to and concur in an appointment made by the mayor of a police sergeant, the city council need not express its consent or concurrence in any particular way or form. In the case at bar the plaintiff was appointed by the mayor, and entered upon and discharged the duties of the office, and his name appeared as sergeant on the monthly pay rolls submitted to and approved by the city council for more than seven years, and through its approval of these pay rolls payments were made to him for eighty-four months as such sergeant. *Held,* that

[1] Reported in 86 N. W. 459.

by these acts the consent of the council to the appointment was clearly shown.

## Consent to Removal.

*Held,* further, that the court below was justified in finding that the plaintiff had not acquiesced or consented to an attempted removal by the mayor, but, on the contrary, had always asserted and maintained his right to the office in question, and to the emoluments thereof.

## Salary Attached to Office.

The salary annexed to a public office is incident to the title to the office, and not to its occupation and exercise, nor to the usurpation or colorable possession of it. On the conditions shown here, there is no merit in the claim that the plaintiff cannot recover because there was a de facto officer to whom the salary was paid during the period of time— about three months—between the day of his attempted dismissal and the day of his reinstatement.

Action in the district court for Ramsey county to recover $311.11, and interest, arrears of salary as sergeant of police. The case was tried before Otis, J., who found in favor of plaintiff for $175 and interest. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*James E. Markham* and *Arthur J. Stobbart,* for appellant.

*Oscar Hallam,* for respondent.

COLLINS, J.

May 1, 1887, at the time the mayor of the city of St. Paul attempted to appoint the plaintiff a police sergeant, it was provided by the charter (Sp. Laws 1887, c. 48, § 12) as follows:

"The mayor shall appoint the chief of police, the captains, the detectives, the sergeants and all policemen, patrolmen and police officers at any time appertaining to the police department of said city, and by whatever name designated, with the advice and consent of the common council; but no person shall be eligible to the appointment as policeman, patrolman or other police officer, who is not a citizen of the United States, or under the age of thirty-five years, able to read and write the English language, a resident of the city of St. Paul for at least two years preceding his appointment, and who is not of good health and physique, the standard of admission into the army of the United States as established by examination to govern in this particular."

Based upon this feature of the charter, it is the contention of counsel for defendant city that the plaintiff was not eligible to appointment as such sergeant, because he was more than thirty-five years of age, and was not a citizen, having simply declared his intention to become such. From the time of the attempted dismissal from the force, June 14, 1894, up to October 6, it stands admitted that he performed no services for the city, and that another person was appointed and acted as sergeant in his place. It was, therefore, incumbent upon him, in order to recover salary, to show that he was eligible to appointment as sergeant, that he was duly appointed to and inducted into office, and that he was not legally dismissed. It is also admitted that the common council never acted upon his appointment by direct vote; in other words, that the council never expressly confirmed his appointment by the mayor. And, further, his removal by the mayor was not approved by the assembly,—one branch of the council as now constituted,—as under the charter it was required to be, in order to become effective. The fact is that the assembly expressly refused to approve the mayor's order of removal.

The first question for consideration, therefore, is whether plaintiff was eligible to appointment at the time in 1887, when it was made. Prior to the year 1883 there had been several enactments in respect to the police force of the city of St. Paul, in which provisions were made for a department consisting of the mayor, chief of police, captains, lieutenants, sergeants, detectives, "policemen, patrolmen, and police officers," each being specially mentioned and provided for. In most of these enactments certain requirements were specified as to qualifications for appointment, but in others none whatever were demanded, the law being silent on the subject. By Sp. Laws 1885, c. 7, § 18,—a charter amendment,—there was a provision that the department should consist of the mayor, a chief, one captain, two lieutenants, four sergeants, three detectives, and as many policemen, patrolmen, and police officers" as might be authorized by the council, with the approval of the mayor. It was further provided that

"No person shall be eligible to the appointment as captain, ser-

geant, detective, policeman, patrolman or other police officer who is not a citizen of the United States, or under the age of thirty-five years, able to read and write the English language, a resident of the city of St. Paul for at least two years preceding his appointment, and who is not of good health and physique, the standard of admission into the army of the United States, as established by examination, to govern in this particular."

The next legislation upon this particular matter was the act of 1887, before quoted; and it will be noticed that captains, sergeants, and detectives, all of whom had expressly been made subject to the eligibility tests prescribed in the act of 1885, were not mentioned. They were omitted from the list as set forth in the enactment of 1887. The latter law repealed that of 1885, and by its provisions we are obliged to pass upon the question of plaintiff's eligibility to the office of sergeant. It is plain that a radical change as to qualifications was intended and accomplished by the amendment. An enactment which required that appointees to positions as captain of police, as sergeants, as detectives, or as policemen, patrolmen, or other police officers must have certain specific qualifications was amended by striking out all reference to captains, sergeants, and detectives, but retaining the words "policeman, patrolman, or other police officer," the result being that policemen, patrolmen, and other officers, only, were required to possess these special qualifications. These requirements were demanded of persons who might be appointed as policemen or patrolmen or other police officers, and a distinction made between officers of the force expressly named and provided for in the charter and other members, generally designated as "patrolmen, policemen, and other police officers,"—a distinction which had prevailed in police legislation from the earliest history of defendant city.

We think this amendment of 1887 had a purpose, and that the whole history of legislation upon this subject clearly indicates that it was the intention of the legislature to except certain officers, who had theretofore been subject to the statutory requirements, from the operation thereof, and to relieve them from restrictions as to eligibility which had previously prevailed. Appointees as policemen, as patrolmen, or as "other police officers"—whatever that term may mean—remained subject to the statute as

to qualifications. It is certain, however, from the language which had been so continuously and persistently used when legislating, that captains, sergeants, and detectives were not included in or by using the words "other police officers." The reason for this change is, we think, apparent. The purpose was to relieve certain officers from the operation of the law as to these qualifications, for the good of the service, and that men of experience might be selected as officers. There was nothing in the act which looked towards relieving men already on the force, but who would be ineligible to appointment because lacking as to one or more of the enumerated requisites, so the fact might be that men holding these offices at the time of the enactment of the law, and not possessing any of the requirements required thereby, would still continue on duty, and over men who were qualified, but who were not appointed until after the law went into effect. This, in time, would work out in accordance with the spirit of the act. Men of experience and mature years would be appointed to positions as officers, and in the future men who did not possess these special requirements would be ineligible to appointment in the ranks; the result being that, without any serious disturbance in public matters, and without detriment to the service, it would be but a few years before all of the officers, as well as the men, would possess the required qualifications. We are therefore of the opinion that the plaintiff was eligible to the office of sergeant when appointed by the mayor in 1887. It follows that it was wholly immaterial that for many years previous he had been a patrolman, and that the court received testimony to this effect, and so found the fact to be.

As before stated, the charter provided that all appointments to the police force must be made by the mayor, with the advice and consent of the council, and the council failed to take any express action in regard to plaintiff's appointment as sergeant. No particular form of expressing its advice or consent or concurrence in the appointment was required. Nothing whatever was done, except that the council approved the monthly pay rolls, in which respondent's name appeared as sergeant, and authorized payment to him as such officer, for more than seven years. On at least

eighty-four different occasions this pay roll was submitted to and approved by the council, and through its approval payment was made to him for eighty-four months. It was competent for the council to express its advice and consent to the appointment without direct action, and to recognize the title of respondent to this office, so that it could not thereafter be questioned. In our opinion, recognition of the appointment by an approval of the pay rolls every month for more than seven years sufficiently established the consent of the council, and from these facts it clearly appeared that the mayor's act was concurred in by that body.

The only question remaining is, did the plaintiff acquiesce in the removal attempted by the mayor, abandon his office, and waive his rights thereto? That he might do this, and thus resign by implication, is beyond question. Byrnes v. City of St. Paul, 78 Minn. 205, 80 N. W. 959. The court below found that the removal was against the plaintiff's protest, and without his consent, that the assembly refused to concur in the attempted removal, and that plaintiff always asserted and maintained his right to the position of sergeant, and to the pay therefor. The proof was that, when plaintiff turned over his insignia of office to his superior officer in obedience to orders, he did so under protest, claiming that he had been illegally removed; and also that, a few days later, he addressed the city council in regard to his removal, protesting against it, and insisting that he was still a sergeant, and entitled to compensation as such. In fact, according to the evidence, he, as well as the assembly, refused to acquiesce in the attempted removal. The trial court was justified in finding that in no manner did he abandon his office, or waive his right to compensation for that part of the time not affected by the statute of limitations. He was put on the force as patrolman some three months after the alleged dismissal, and the only thing he failed to do was to institute legal proceedings against the city to cause an earlier reinstatement. This he was not obliged to do under the circumstances, for it was his legal right to wait, and then to enforce collection of his pay in the courts.

The claim that plaintiff cannot recover because there was a de facto officer to whom the salary was paid is without merit, under

the conditions here shown. The salary annexed to a public office is incident to the title to the office, and not to its occupation and exercise, nor to the usurpation or colorable possession of it. See Parker v. Board of Supervisors, 4 Minn. 30 (59).

Order affirmed.