## REES v. CITY OF MUNCIE.

[No. 13,948. Filed February 5, 1932. Rehearing denied July 28, 1932. Transfer denied January 11, 1933.]

*Eichhorn, Gordon & Edris,* for appellant.

*C. A. Taughinbaugh* and *George H. Koons,* for appellee.

LOCKYEAR, J.—This was an action by the appellant against the city of Muncie to recover salary alleged

to be due by reason of his having been appointed a patrolman and a member of the police force of said city and by reason of an alleged unlawful attempt of the Board of Public Safety of said city to discharge him. The appellant alleges in his complaint that he is still a member of the police force of said city and entitled to a salary of $140 per month from the date of his discharge to the time of the trial in this action.

The appellee filed an answer in five paragraphs. Those which we need to consider are the first, an answer in general denial, and the third paragraph of answer which alleges that the appellant voluntarily retired from the police force of said city and abandoned the office, and has not since done or performed or offered to do or perform any work as a police officer of the police force of the city of Muncie.

The court found the facts specially and stated conclusions of law thereon.

The essential facts found by the court were, in substance, that Albert Rees was on the third day of January, 1922, appointed by the Board of Public Safety of said city as a detective of the police force of said city, and was duly qualified as such, taking an oath and filing a bond as by law required; that his salary was $130 per month and was increased to $140 per month; that on the 12th day of October, 1922, at a meeting of said Board of Public Safety, in order to provide funds to aid in certain necessary repairs and equip the motor equipment of said department, said Board of Public Safety reduced the night force of the department by laying off two detectives, to wit: Jerry Curran and Albert Rees, the appellant. Said order was entered upon the records of said board to become effective October 15, 1922, and said night force was reduced for said reason as stated above.

That on the said 12th day of October, 1922, at the time the order of said Board of Public Safety reducing the force was made, Albert Rees was on his vacation, which expired on October 15, 1922; that after the action of said board had been taken, and before the appellant had reported for duty from his said vacation, the chief of police of said city of Muncie, pursuant to the order of said Board of Public Safety, called the appellant over the telephone and informed him of the said board's action and requested him to return his detective badge to police headquarters.

That the said appellant did send his said detective badge to the said police headquarters, but he made no inquiry as to whether or not any charges had been filed against him and *demanded no hearing* before the said Board of Public Safety; that he never thereafter reported for duty to the said Board of Public Safety or to the said chief of police or to any other office of said department, but acquiesced in the action of said Board of Public Safety and abandoned his said office as such detective and started a private detective agency of his own.

The court stated its conclusions of law that the law is with the appellee, that the appellant is entitled to recover nothing and that the appellee is entitled to recover costs from the appellant.

Judgment was rendered in harmony with the conclusions of law as stated by the court.

Sec. 160 of the Acts 1905, p. 339, which is Sec. 10864 Burns 1926.

This section is applicable to the facts of this case and a part of said section is as follows:

"Every member of the fire and police forces, and all other appointees of the commissioners of public safety, shall hold office until they are removed by the board. They may be removed for any cause other than poli-

tics after an opportunity for a hearing is given, *if demanded,* and the written reasons for such removal shall be entered upon the records of such board." (Our italics.)

The appellant assigns as error the overruling of the motion for a new trial, which is upon the grounds that: The decision of the court is not sustained by sufficient evidence; the decision of the court is contrary to law.

Appellant also assigns as error that the court erred in each separate conclusion of law.

There is evidence in the record to support the court's finding of fact in that the appellant, upon request, returned his badge to police headquarters and made no inquiry as to whether or not any charges had been filed against him and there is no evidence that he ever demanded a hearing before the board nor did he thereafter report for duty, but conducted a private detective agency of his own and sought to be appointed a constable, a deputy sheriff, and also sought to be appointed special policeman without pay under the same Board of Public Safety.

From the evidentiary facts we are of the opinion that the court was justified in finding as an ultimate fact that the appellant abandoned his office and the conclusions of law are properly stated.

Where, as in this case, there is any competent evidence to support the finding of the court that the appellant abandoned the office and failed to demand a hearing such finding is binding on this court.

That the appellant may abandon his office and acquiesce in the action of the Board of Public Safety is beyond question. *Byrnes* v. *City of St. Paul* (1898), 78 Minn. 205, 80 N. W. 959, 79 Am. St. Rep. 384; *Larsen* v. *City of St. Paul* (1901), 83 Minn. 473, 86 N. W. 459; *Hagan* v. *City of Brooklyn* (1891), 126 N. Y. 643, 27 N. E. 265; *Phillips* v. *City of Boston*

(1890), 150 Mass. 491, 23 N. E. 202; *Bernard* v. *City of Hoboken* (1859), 27 N. J. L. 412; *Leonard* v. *City of Terre Haute* (1911), 48 Ind. App. 105, 93 N. E. 872.

The judgment is affirmed.

Kime, J., dissents.

### DISSENTING OPINION.

KIME, J.—After having read all the briefs, every word of evidence and examined and read every authority cited, I cannot agree with the majority opinion herein. The following statement explains my theories:

Rees commenced his duties on January 3, 1922, and continued to serve until the early part of October, 1922, at which time he went on his vacation. Rees had never been required to provide himself with a uniform. While on his vacation he was called on the telephone by the chief of police and told that he had been discharged from the department. *No charges of any nature had been preferred against Rees,* and he was not given a hearing before being discharged. It is true Rees did not demand a hearing and evidence was introduced at the trial showing that he opened and operated a private detective agency subsequent to his dismissal. Appellee contends that this action constitutes an abandonment of office.

Many questions have been raised in this case, but it appears to me that the principal questions involved are: was the appellant a duly appointed member of the police force and a police officer, and, if so, was his discharge legal? Appellee maintains that appellant's dismissal was due to the fact that he was a "detective" and that the office of detective was abolished and abrogated by the board, reducing the police force for economic reasons, and further maintains that the dismissal was proper and legal, and rely upon Sec. 158 of the Towns and Cities Act, Acts of 1905, p. 336, being Sec. 10859

Burns Ann. St. 1926, which they claim expressly excepts the office of detective from the provision providing for dismissal only for cause and a hearing.

It is shown that the city of Muncie operated under the Metropolitan Police Laws and had a Metropolitan Board of Police Commissioners until April 1, 1920, when said board ceased to exist. On this same date a Board of Public Safety was duly appointed and regularly qualified as provided by law. It was stipulated by the parties that Muncie was a second class city of more than 40,000 and less than 50,000 ever since the 4th day of March, 1920.

The Metropolitan Police Laws of this state make specific provisions for the appointment of captains, sergeants, detectives, etc., which provisions, in effect, designate these various officers as separate classes of appointees. A careful study of the statutes applying in the instant case, being the Towns and Cities Act of 1905, reveals that no specific provision is made for the appointment of "detectives" as a separate class of officers. The language used in Sec. 159, Acts 1905, p. 338, being Sec. 10862 Burns Ann. St. 1926, is as follows: ". . . The board shall appoint a chief of police, a chief of the fire force and *all other officers, members and employees of such fire and police forces,* together with a market master, station-house keeper, and other officials that may be found necessary for such department of public safety. . . ." (My italics.) As already stated, appellee strongly urges and relies upon Sec. 10859, *supra,* which says, "Such commissioners shall have power, for cause assigned on a public hearing and on due notice according to rules to be promulgated by them, to remove or suspend from office, or for a definite period deprive of pay, any officer or member of such police force, except that detectives may be dismissed at any time by said commissioners." Immediately fol-

lowing the section above quoted is Sec. 160 of the Acts of 1905, p. 339, which is Sec. 10864 Burns Ann. St. 1926, which section is entitled "Fire and Police Forces —Removals—Procedure," a part of which section is as follows: *"Every member of the fire and police forces, and all other appointees of the commissioners of public safety,* shall hold office until they are removed by the board. They may be removed for any cause other than politics after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon records of such board. . . ." (My italics.) I cannot reconcile the language of this section with that of Sec. 10859, *supra,* which provides for the dismissal of detectives. Where no specific provision is made for the appointment of detectives as a distinct class and a man is appointed by a Board of Safety as "a detective of the police force," I cannot, by the widest stretch of imagination, conceive of a situation whereby he would not be a "member of the police force." It will also be noted that Sec. 160, *supra,* deals specifically with the removal of firemen and policemen and all other appointees of the commissioners of public safety. It certainly cannot be denied that appellant was an appointee of the Board of Safety. It seems to me that inasmuch as Sec. 160 is a later section than 10859, and there is an irreconcilable conflict between the two, the rule should be invoked that where there is a conflict between different sections or provisions of the same act the last in order of time or local position must prevail. *Quick* v. *Whitewater Township* (1856), 7 Ind. 570; *Curless et al.* v. *Watson* (1913), 54 Ind. App. 110, 100 N. E. 576; *Woodring et al.* v. *McCaslin et al.* (1914), 182 Ind. 134, 104 N. E. 759. The appellant was appointed, as evidenced by his certificate of appointment, a "detective of the police force of the city of Muncie," took oath of office as a "detective of the

police force of the city of Muncie," and gave bond as such. However, it cannot be denied that he was a "member of the police force," and as such he was entitled to a hearing or could only be dismissed for cause as heretofore stated. On the other hand there was introduced in evidence a special order of the Board of Safety containing the following language: "The following are hereby appointed to the police force," and then appears the names of several men, including that of appellant. The order continued by saying that "Upon recommendation of the chief of police the following assignments to duty are hereby announced," and then appears the name of appellant and another whom were both assigned as detectives on the night force. There was also introduced in evidence another record of the Board of Safety as of the same date as the one above, wherein it was stated that "Upon the recommendation of Chief Benbow the following *new members of the force were appointed and properly sworn in and* bonds approved," and that "the recommendations of Chief Benbow as to the assignments was read and approved by the board." All this shows without a doubt that appellant was a member of the police force and he is entitled to every consideration as such. Were this court to hold that the provision for the dismissal of detectives in Sec. 10859, *supra,* is effective and applies to persons in the situation of this appellant it would then open an easy way for a Board of Public Safety to evade the plain provisions and intent of the statute. The board would merely have to designate any member of the police force a detective and thereafter he could be removed without cause and without a hearing. In making these suggestions, however, I am not to be understood as imputing, or attempting to impute, any such evasion to appellee in the instant case, but simply make them in support of the view with which I am impressed

in respect to the interpretation to be placed upon the statute in question.

It is further claimed by appellee that the office of detective was abolished and abrogated by the Board of Safety for economic reasons, and particular stress is laid upon an order of the board, which reads as follows: "Upon recommendation of Van Benbow, chief of police, it was ordered by the board that the night force of the police department be reduced by laying off two plain clothes men, to wit: Jerry Curran and Albert Rees. Said order to become effective on Saturday, October 15, 1922." It is plainly evident from the language of this order that appellant was· unequivocally recognized as a "member of the police force." It is my opinion that the order *fails absolutely* to state the alleged intention of appellee, namely, that the police force be reduced for economic reasons. The action of the board was not to abolish the office of appellant, nor to reduce the *police force,* but only "that the night force of the police department be reduced." Neither do I find at any place any mention of the existence of an economic necessity for such a reduction. The appointment of appellant to the police force, whether as a detective or in any other capacity, made him an officer or member of the police force and an appointee of the Board of Public Safety, and he could be removed only for cause after notice and an opportunity to be heard, and it was necessary for the board to *enter the grounds of his removal upon the record.* Sec. 10864, *supra; Leonard* v. *City of Terre Haute* (1911), 48 Ind. App. 104, 93 N. E. 872; *Roth* v. *State, ex rel.* (1902), 158 Ind. 242, 63 N. E. 460. I am not attempting to encroach upon the rule that when the city has the power to create an office it also has the implied power to abolish the same, but I believe that where there is a statute regulating the removal of certain classes of office

holders such statute must be followed when a removal is attempted. In view of the fact that the statute specifically states that the written reasons for removal shall be entered upon the records of the board, and said records fail absolutely to state the alleged intention of the board to dismiss appellant from the police force or that an economic necessity existed, I fail to find any competent evidence to sustain the finding of the trial court that such an economic necessity existed.

Appellee maintains that there is no such office as "member of the police force" created by law or ordinance of the city of Muncie, and that there was no such office as detective created by charter law of the city or the statutes of Indiana applicable to Boards of Public Safety in cities of the second class, and that the council may create the same and fix a salary therefor, or not, as it may determine, and if there is no such salary or office created there could be no valid appointment, no de jure office and appellant could not recover salary during the time he was removed and rendered no services. This contention is correct in part, but not in its entirety. There is no denying that appellant was a "member of the police force," and Sec. 10862 Burns Ann. St. 1926, part of which I have already quoted and which appellee cites, says clearly that the Board of Safety shall appoint a chief and *all other officers, members and employees of such police forces.* This certainly gives the Board of Safety the right to create any office on the force which they deem necessary and it follows that the office held by appellant herein was legally created by the board that appointed him to same. It is my opinion that every appointee who possesses the qualifications laid down by the statutes and who has completed the necessary requirements as to the matter of furnishing bond, taking oath, etc., is a de jure officer of the police force. Bear in mind that this relates to

appointees only and not employees. Every member of the force, where the law permits promotions or reductions in rank at the will of the chief, Board of Safety, or mayor, as the case may be, is basicly a member of the force of the lowest rank, which, in the instant case, would be a patrolman. The uncontradicted and unqualified evidence shows that appellant was appointed to the police force by the board and that he was treated as a member thereof until October 12, 1922. He was never legally removed, and he therefore became and continued to be an officer of the city and entitled to the salary of the office. I concede that the order of the board was effective for the purpose of reducing the night force of the police department but it did not abolish any office or reduce the number of men in the police department, therefore, in the absence of any specific assignment to duty on some other shift as a detective or in any other capacity, appellant automatically reverted to the lowest ranking position as a "member of the police force" to wit, a "patrolman" and is entitled to salary as such. The salary is an incident of the office and not to its occupancy. It follows the true title to the office. *City of Indianapolis* v. *Martin* (1909), 45 Ind. App. 256, 89 N. E. 599; *Board of Commissioners of Allen County* v. *Chapman* (1898), 22 Ind. App. 60, 53 N. E. 187; *Nichols* v. *MacClean* (1886), 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; *State* v. *Walbridge* (1899), 153 Mo. 194, 54 S. W. 447.

As to the question of abandonment which was interposed by appellee as a defense, it appears to me that same in this instance is an extremely technical subterfuge to the main issues which I have heretofore discussed. Intent is a very important factor in establishing abandonment, and *there is nothing in the evidence which tends to show that appellant intentionally relinquished his office.* True, appellant complied with the

order of his chief to turn in his badge, but it is reasonable to assume that his refusal so to do would not have availed him anything at the time. It was only necessary for appellant to show that he was ready and willing to perform the duties of his office. *U. S.* v. *Wickersham* (1906), 201 U. S. Rep. 390.

In *Selby* v. *City of Portland* (1886), 14 Oregon 243, 12 Pac. 377, 58 Am. Rep. 307, the court said: "I presume instances have occurred in which officers have abandoned their offices, but they have been so rare that it requires cogent proof to establish them as matters of fact. An officer, doubtless, might legally abandon his office when wrongfully ousted therefrom. His permanent removal from the territorial jurisdiction of the office would necessarily have that effect; but his failure to keep up a clamor for reinstatement could not certainly be urged as evidence of abandonment.

"The mayor, with the consent of a majority of the common council, had the appointment of these officers, and could remove or suspend them. He, with the consent of that body, did appoint other persons to supersede them, and they were formally installed and remained in these positions. *What, therefore, could the appellant and his assignors do in the premises but submit to the action of those officials, or institute legal proceedings to annul their acts?* I have read the testimony in the bill of exceptions, and do not think it tends to show an acquiesce in the removal or abandonment of the officers by the appellant and his assignors—do not find that they ever proposed to relinquish them. It appears that the most that can be said in regard to their conduct is that they did not attempt to contend about going out of their places, or about being let in again. There is certainly nothing to show that they relinquished any right, or did anything to estop them from claiming the offices. If the mayor and common council had offered

to restore them to their positions, and they had refused such restoration, there would be grounds upon which to claim an estoppel, but as the case stood, I am unable to discover that there was any such ground." (My italics.) In the instant case it is shown that appellant served notice on the proper parties, that he still believed himself a member of the police force and demanded his salary as such. The fact that appellant resorted to other means of earning a livelihood in the interim is not sufficient to establish an abandonment of the office. Neither was appellant required to intrude himself upon the officers responsible for his attempted dismissal and offer his services or demand a reinstatement. *Gracey* v. *St. Louis* (1908), 213 Mo. 384, 111 S. W. 1159, 19 R. C. L. p. 942; *Selby* v. *Portland, supra; Seifen* v. *City of Racine* (1906), 129 Wis. 343, 109 N. W. 72.

Granting that the facts as found by the trial court are true, it remains, however, for this court to say, as a matter of law, whether or not such facts constitute an abandonment, and I am decidedly of the opinion that they do not. As to appellant's failure to demand a hearing as provided by statute I have but to say that the same statute provides that the written reasons for removal shall be entered upon the records of the board. In view of this, appellant had a right to rely on whatever reasons were entered on the records and base his action thereon, and it was not necessary that he demand a hearing. The board attempted to dispose of him by assigning written reasons. When appellant knew that the attempted assignment of reasons was not sufficient, can it be said that it was necessary for him to then immediately object and show the board wherein they were wrong. Appellant, knowing the temper of the administration, knew that such a move would be futile. All the board would have to then do would be to amend their reasons to comply with the facts and the statute

and appellant would have been effectively removed. Knowing their pretended reasons were faulty he certainly had the right to wait until such time as he could secure counsel. Certainly ten months is not an unreasonable time to secure counsel to engage in a suit involving the numerous and difficult questions found here.

The majority opinion says the court found that "in order to provide funds to aid in certain necessary repairs and augment the motor equipment of said department the said Board of Public Safety reduced the night force of the department by laying off two detectives." The court did find this but the board did not assign this as a reason upon the record.

The majority call attention to the fact that the court found that appellant made no inquiry as to whether or not any charges had been preferred. He did not have to make inquiry. If charges had been preferred he would have been given notice. This finding of fact does not lend any strength to the majority opinion. The records were public and everyone is presumed to know what they contain. Rees knew what the records said, he did not have to inquire.

The entire court agrees that Rees was a police officer of the city, and, in my opinion, there is an appalling lack of evidence to sustain a finding that he abandoned the office. There are two essential acts necessary to constitute a legal finding of abandonment, namely, the intention to abandon and the external act by which it is carried into effect. Intention is a paramount factor and there is an absolute failure to show that Rees intended to relinquish the office. As to his acts, I have but to say that whatever action he may have taken was practically forced upon him. It is my opinion that the judgment of the Delaware Circuit Court should have been reversed.