# RICHARD F. SPURCK v. CIVIL SERVICE BOARD.[1]

May 11, 1950.

No. 35,075.

[1]Reported in 42 N. W. (2d) 720.

*J. A. A. Burnquist,* Attorney General, and *William C. Green,* Special Assistant Attorney General, for appellant (respondent below).

*Briggs, Gilbert, Morton, Kyle & Macartney,* for respondent (relator below).

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court vacating findings and an order of the state civil service board in certiorari proceedings.

Cases in which relator has been involved arising since his original employment by the state have been before this court on three previous occasions: State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259; State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574; and State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N. W. (2d) 583. While the events preceding the present litigation are de-

tailed in the above cases, for the purpose of clarity it will be necessary to restate some of them here.

In 1939, the functions and employes of the state relief agency, where relator had served as an attorney since 1934, were transferred under M. S. A. 256.01, subd. 3, to the department of social security, division of social welfare, where relator's employment continued.

According to the petition for writ of certiorari in the present proceedings, relator was transferred to the newly created department of social security on or about July 1, 1939, and became an employe of the division of social welfare at a salary of $200 per month. On or about July 29, 1939, the director of the division purported to establish relator's position as principal clerk, reducing his salary to $150 a month. Within 30 days thereafter, relator attempted to obtain a review of this action by the civil service board. Failing to obtain satisfaction, relator commenced a mandamus proceeding on October 21, 1941, to compel the director of civil service to classify his position and allocate him to it. This action culminated in the decision in State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259, *supra*, wherein we affirmed the district court's issuance of a writ of mandamus to compel the director of civil service to classify relator's position and allocate it to him. Sometime thereafter, the civil service board claims to have classified relator as attorney II. Meanwhile, on April 1, 1942, while the mandamus proceedings were pending, the director of the division suspended relator and on April 27, 1942, discharged him for an alleged falsification of an expense account. The civil service board affirmed that action. Thereafter and on June 18, 1943, pursuant to our decision in the Pennebaker case, the director of civil service allocated relator's position to that of class attorney I. This action was also approved by the civil service board. Relator then brought certiorari to review the action of the board. In that matter, the district court of Ramsey county on April 19, 1944, held that such discharge was unauthorized. The civil service board then held a further

hearing on its own motion and on July 6, 1944, purported to reinstate relator to the position of class attorney I, found that no such position existed in the division, and placed relator on the reëmployment register for employment at such time as such position might be created. On November 16, 1944, relator commenced mandamus proceedings to compel his reinstatement. That action, together with the certiorari proceedings commenced on January 13, 1944, was appealed to this court. In State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574, *supra*, we held as a matter of law that the position which relator held on April 22, 1939, should have been class attorney IV and not class attorney I. In the mandamus proceedings (State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N. W. [2d] 583, *supra*), we reversed an order of the district court, with directions to enter judgment that relator was entitled to a writ of · mandamus compelling the civil service board to allocate him to the position of class attorney IV in accordance with the determination in the certiorari proceedings.

On October 20, 1948, the civil service board, in compliance with the directions arising out of our decision in State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N. W. (2d) 583, *supra*, ordered relator's reinstatement as of October 1, 1948, to the position of class attorney IV. It also set a date for hearing the matter of back pay for relator. After that hearing, the board made findings and an order on February 2, 1949, wherein it found that during the time of his separation from state service relator, if he had not been so separated, would have been paid a salary as class attorney II amounting to $18,310, "not including merit increases"; that by reasonable diligence relator could have obtained employment as an attorney during this period of separation and could have earned $3,000 per year; and that the award of back pay should be reduced by that amount. The board thereupon entered its order awarding relator $560. After these findings and order were made, relator again commenced certiorari proceedings in the district court of Ramsey county to review the

board's order of February 2, 1949. On July 7, 1949, that court entered an order vacating the findings and order of the civil service board. It is from that order of the district court that the board now appeals.

■ The first question to be determined is whether the civil service board properly applied M. S. A. 43.24 as it appeared prior to its amendments by L. 1947, c. 604. The principal changes which we are considering, made in the 1939 law by the 1947 amendment, are as follows:

With reference to provision for hearing, the original act provided that "Such employee * * * may demand a hearing to determine the reasonableness of such action," whereas the 1947 amendment provides that "Any permanent employee who is removed, discharged, or suspended without pay for more than 30 days may appeal to the board * * *."

Concerning politically inspired discipline, the original act provided:

"If the board finds that the disciplinary action was for religious or political reasons, then the employee shall forthwith be reinstated in his position and be reimbursed for any loss of pay occasioned by such disciplinary action."

The 1947 amendment reads:

"* * * If the board finds that the action complained of was taken by the appointing authority for any political, racial or religious reason, the employee shall be reinstated to his position without loss of pay."

In all other cases the original act provided:

"* * * the board shall approve or disapprove the action. In case of approval the disciplinary action shall be deemed final as ordered. In case of disapproval the board shall reinstate the employee under such conditions as it deems proper, and may order full pay for lost time."

The 1947 amendment reads:

"* * * In all other cases, the findings and recommendations of the board shall be final. If such final decision is in favor of the employee, the appointing authority shall reinstate him and approve the payment of any salary or wages lost by him."

The board contends that the acts which gave rise to relator's rights to reinstatement and back pay occurred prior to the amendment of the statute, and that consequently to apply the amended statute would give it a retroactive construction in the absence of a clear and manifest legislative intent that such is the case. M. S. A. 645.21 provides:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

See, also, Crawford, Statutory Construction, § 306. This, of course, is the case unless the changes effected by the 1947 amendment are procedural in nature. Oppegaard v. Board of Co. Commrs. 110 Minn. 300, 125 N. W. 504; 6 Dunnell, Dig. & Supp. § 8946. However, if the qualification of the remedy is so extensive as to affect relator's substantive rights, the statute will not be retroactively construed. Soderstrom v. Curry & Whyte, Inc. 143 Minn. 154, 173 N. W. 649; Bascom v. District Court, 231 Iowa 360, 1 N. W. (2d) 220; Crawford, Statutory Construction, § 279. We have compared the statutes in question and conclude that the original statute of 1939 should apply. Without making a specific construction of the amended act, we think it enough to say that the substantial changes made were more than merely procedural. Accordingly, the rights of the parties are governed by the earlier enactment. Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535; Northrup v. Hayward, 102 Minn. 307, 113 N. W. 701; 12 Ann. Cas. 341; State ex rel. Ruesswig v. McDonald, 101 Minn. 349, 112 N. W. 278.

■ The board next contends that, inasmuch as the 1939 statute provides that the board *shall* reinstate an employe under such terms and conditions as it deems proper and *may* order full

pay for lost time, it confers an unrestrained discretion in the matter of back pay. Consequently, the argument continues, any award the board chose to make was within its discretion and was not subject to review.

We agree that the statute confers discretionary powers upon the board. State ex rel. Rose v. Town of Greenwood, 220 Minn. 508, 20 N. W. (2d) 345; State ex rel. Birkeland v. Christianson, 179 Minn. 337, 229 N. W. 313; *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 33 Minn. L. Rev. 569, 584. However, in determining the extent of the discretion, we must construe the statute in the light of its objects and purposes. § 645.16. We believe that the object of the act is to protect state employes from discharges or other interferences with their employment, save for cause, and that the provision giving the board discretion in the matter of back pay must be construed as limited by an implied command that the board reasonably exercise its discretion so as to effectuate that object. Cf. Walklet v. Civil Service Comm. 114 N. J. L. 582, 177 A. 894. Clearly, it would seem that the board has no unconditioned right, in any context of circumstances, arbitrarily or unreasonably to make such award as it sees fit. We have defined discretion as "the power or right of acting officially according to what appears best and appropriate under the circumstances." Romsdahl v. Town of Long Lake, 175 Minn. 34, 36, 220 N. W. 166, 167. Obviously, each case must be judged on its own facts.

■ Further, the board contends that the statute limits the power of the board to award back pay to the amount lost by relator by reason of wrongful discharge; that consequently, in considering the matter of back pay, the board was bound to exclude from its computation the amount relator lost by reason of his wrongful demotion between 1939 and his outright discharge in 1942; and, similarly, that since relator held the classification of attorney II at the time of his discharge the computation must be based on the salary rate of class attorney II, as

that was the extent of his loss by reason of the wrongful discharge as distinguished from the erroneous classification.

However, in reviewing the history of the cases in which relator has been involved in this court, it would appear that we have already considered that the classification was erroneous when we said (State ex rel. Spurck v. Civil Service Board, 226 Minn. 250, 32 N. W. [2d] 581):

"* * * The record shows that the civil service officials acted arbitrarily with respect to the matter."

Further, § 43.24, subd. 1, forbids not only discharge, but reductions in pay or position *without just cause*. Since an erroneous reduction in classification operates directly on the employe's position, reducing its dignity and compensation, it is quite clear that such classification violates the statute. There can be little disagreement that such reductions could be used to frustrate the policy of the act of protecting the employe from interferences with his employment without just cause. Wilson v. Board of Education, 327 Ill. App. 338, 64 N. E. (2d) 380, and cases there cited. Were we to follow the board's argument, the employe's right in cases such as these would turn on the intention with which the reduction was made and would provide a convenient means of circumventing the act. Inasmuch as we held earlier that since 1939 relator has been entitled to the position of class attorney IV (State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. [2d] 574, *supra*), we hold that the board abused its discretion by failing to compute the back pay award on the class attorney IV salary rate attached to that position and in failing to include therein the sums lost by relator because of the wrongful reduction in pay prior to his discharge.

What we have already said requires an affirmance. However, in order to assist in bringing to an end this litigation, which has already continued for more than ten years, we shall lay down some rules for the guidance of the civil service board in redetermining the matter of back pay.

■ First, as we have already said, the computation must be based on the salary of class attorney IV. However, the board's finding that the so-called merit increases were not a matter of right or were not automatic, and therefore should be excluded from the salary computation, finds sufficient support in the record and must be affirmed. State Board of Equalization v. Superior Court, 20 Cal. (2d) 467, 127 P. (2d) 4.

■ Next is the matter of offset. The board found that relator, by the exercise of reasonable diligence, could have earned an average of $3,000 a year from the practice of law during the time in question. Since the board allowed relator six months in which to open an office or find legal employment, it appears to have concluded that he would have earned $17,750 during the period of his separation. Deducting that sum from the $18,310 which relator would have earned at the class attorney II salary rate during the period involved, the board entered an order directing payment of the $560 difference to relator. The board also found that relator's actual earnings from legal work averaged $208.56 a year, while his earnings from other work and personal ventures averaged $797.88 per year. It apparently included neither of these figures in the offset computation. On certiorari in the instant case, the district court agreed that the back pay due relator was subject to deductions in mitigation of the state's damages, but vacated the board's findings pertinent thereto on the ground that relator's possible earnings as a practicing attorney were so problematical or speculative as to provide no sound basis for the computation of net income. Further, the trial court considered it doubtful that a wrongfully discharged employe could be required to engage in the hazards of practicing law in Minneapolis in order to mitigate his damages.

On this appeal, relator contends that he was a public officer and not an employe, so that under our previous decisions his salary was annexed to the office and was not subject to deductions in mitigation of damages. Larsen v. City of St. Paul, 83 Minn. 473, 86 N. W. 459; Markus v. City of Duluth, 138 Minn.

225, 164 N. W. 906; Ryan v. Hennepin County, 224 Minn. 444, 29 N. W. (2d) 385. Alternatively, relator takes the position that even if a civil servant be considered an employe it would be an injustice to place upon him a duty of mitigation. The board, on the other hand, contends that relator was a public employe and, as such, falls within the rule applied in cases of breach of private employment contracts; that the employe is under a duty to use due diligence to obtain like employment and that any loss of wages must be reduced by the amount which the employe might have so earned. This court is therefore confronted for the first time with the question whether a wrongfully discharged civil servant, who holds his position under the civil service laws, should be made subject to the rule that obtains in private employment.

We see no point in entering upon a protracted discussion of our earlier cases distinguishing between public officers and employes for purposes other than the one at hand. As pointed out in Tillquist v. State Dept. of Labor and Industry, 216 Minn. 202, 12 N. W. (2d) 512, a public servant's status may vary according to considerations of policy relevant in a given situation. Where the usual indicia of public office were lacking, as in the instant case, the president of a state university was held to be an employe, not an officer. Martin v. Smith, 239 Wis. 314, 1 N. W. (2d) 163, 140 A. L. R. 1063.

Relator relies on certain Minnesota cases where municipal servants holding their positions under local charter or civil service provisions were held to be public officers. Two of these, Larsen v. City of St. Paul, 83 Minn. 473, 86 N. W. 459, and Ryan v. Hennepin County, 224 Minn. 444, 29 N. W. (2d) 385, *supra,* involved police officers, which are quite generally conceded to be public officers, and need not detain us here. However, in Markus v. City of Duluth, 138 Minn. 225, 164 N. W. 906, *supra,* and Gude v. City of Duluth, 144 Minn. 109, 174 N. W. 614, a building appraiser and an inspector in the department of public works, respectively, were held to be public officers and entitled to all the salary due the office during the period they were wrongfully excluded therefrom. The Markus case cited with approval United States v. Wickersham, 201 U. S.

390, 26 S. Ct. 469, 50 L. ed. 798, a case in which a clerk-typist was held to be a public officer for the purpose of recovering salary accruing during the wrongful separation. See, also, Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, 55 Am. R. 835.

It must be noted that these cases were decided under statutes differing from the one before us and under quite different conditions. In cases more closely similar to the one at hand, it has been held quite uniformly that public servants holding positions of responsibility under civil service acts are employes and not officers for our purposes. In Sutliffe v. City of New York, 132 App. Div. 831, 117 N. Y. S. 813, and Gutheil v. City of New York, 119 App. Div. 20, 103 N. Y. S. 972, it was held that a clerk and a street cleaner, respectively, were employes, not officers, and that, inasmuch as their relation to the city was contractual, the mitigation rule applied. Prowler v. City of New York, 216 App. Div. 824, 216 N. Y. S. 901 (affirmed, 243 N. Y. 607, 154 N. E. 624); La Chicotte v. City of New York, 166 App. Div. 279, 151 N. Y. S. 566. In a series of cases, the California courts have held the following to be employes subject to the rule of mitigation: Investigator of state highway patrol (Kelly v. State Personnel Board, 31 Cal. App. [2d] 443, 88 P. [2d] 264); personnel officer of the National Guard (Wiles v. State Personnel Board, 19 Cal. [2d] 344, 121 P. [2d] 673); chief of the division of state employment agencies (Stockton v. Dept. of Employment [Cal. App.] 140 P. [2d] 147, 25 Cal. [2d] 264, 153 P. [2d] 741); state liquor control officers (State Board of Equalization v. Superior Court, 20 Cal. [2d] 467, 127 P. [2d] 4). In Kennon v. Schlesinger (Tex. Civ. App.) 182 S. W. (2d) 373, the Texas court held the secretary and executive director of a housing authority to be an employe. In Borak v. United States, 78 F. Supp. 123, 110 Ct. Cl. 236 (certiorari denied, 335 U. S. 821, 69 S. Ct. 43, 93 L. ed. 375), the court of claims held a naturalization examiner, whom they conceded to be an officer of the United States, to a duty to mitigate damages. See, also, Corfman v. McDevitt, 111 Colo. 437, 142 P. (2d) 383, 150 A. L. R. 97, and cases collected in the annotation thereto,

We think that the cases just cited amply illustrate that civil service employes, generally speaking, are employes, although they may hold positions of importance. They exercise no sovereign prerogative. Despite their assured tenure under the law, their relationship to the state is essentially contractual. Further, as we read the statute, that is the result intended by the legislature. As the district court aptly points out: "The statute does not divide employes having a permanent status in the classified service into 'officers' and 'nonofficers', with distinct right or privileges. * * * The legislature did distinguish between two classes of unauthorized disciplinary action." The trial court then goes on to point out that in case of a disciplinary action, for certain specified reasons, the statute requires reinstatement and reimbursement for any loss of pay occasioned thereby and that if all reinstatements are without reductions in mitigation the distinction becomes meaningless. Inasmuch as the statute uses the word "employee" and the legislative policy can be effectuated while accepting that term with the implications which the courts have attached (6 Dunnell, Dig. § 8975), we conclude that relator was properly held to a duty to mitigate the state's damages.

We pass now to the question of what items of offset claimed are allowable. Here, the inquiry assumes two directions, namely, what deduction should be permitted for sums which relator by the exercise of reasonable diligence might have earned and what deduction, if any, should be permitted for sums actually earned.

■ It is settled law in this state that an employer who wrongfully discharges his employe must indemnify the employe only for wages lost (McMullan v. Dickinson Co. 60 Minn. 156, 62 N. W. 120, 27 L. R. A. 409, 51 A. S. R. 511), and that the employe correspondingly must reduce his claim for wages by the amount which, by the exercise of due diligence, he could have earned in employment of a like kind or grade. Williams v. Anderson, 9 Minn. 39 (50); Horn v. Western Land Assn. 22 Minn. 233; Cooper v. Stronge & Warner Co. 111 Minn. 177, 126 N. W. 541, 27 L.R.A.(N.S.) 1011, 20 Ann. Cas. 663. Where a discharged employe sues for loss of time, the burden

of proof is upon the employer to show that he was discharged for cause or that he obtained or could have obtained other employment. Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 152 N. W. 535; McClelland v. Climax Hosiery Mills, 252 N. Y. 347, 169 N. E. 605; 4 Dunnell, Dig. § 5851. We must consider the board's finding that relator could have earned $3,000 per year as a practicing attorney in the light of these rules.

The evidence upon which the board relied in making its finding was as follows: That relator maintained an office in his home in Bloomington, about ten miles from the Minneapolis loop; that his legal certificates were there displayed, but no sign was placed on the exterior of the building; that he made no effort to obtain employment with Twin Cities law firms, nor did he make application to the various federal agencies or the United States civil service for employment, although he did apply to the United States employment service, listing himself as an attorney; and that relator had practiced law in Minneapolis between 1926 and 1934, earning an average of $3,000 per year in such practice. Relator testified that the stigma associated with his discharge made it futile to seek employment in the Twin Cities; that the federal positions were menial and would take him away from home; that he maintained an office in Bloomington and had a wide acquaintance there; and that he would have had a good practice there had it not been for the publicity attending his discharge.

Reviewing this finding, the district court held that it was unsupported by the evidence, and in this conclusion we agree. As the district court pointed out: "* * * it seems very doubtful whether a wrongfully discharged employee * * * could be required to engage in the hazards of practicing law in Minneapolis in order to mitigate damages." In Bang v. International Sisal Co. 212 Minn. 135, 141, 4 N. W. (2d) 113, 116, 141 A. L. R. 657, this court said:

"* * * A wrongfully discharged salesman ought not to be required to accept employment compelling self-financing and offering no certainty of reward under penalty of losing that, or part of that,

to which he is entitled under a contract having a salary inducement."

It is our conclusion that the facts set out were not sufficient to warrant the finding that relator failed to exercise reasonable diligence in obtaining employment in view of the board's burden of proof on that issue. Relator contends that the federal positions available were of a menial sort, and the board produced no evidence contradicting that contention. Inasmuch as relator was within his right in refusing inferior employment (Cooper v. Stronge & Warner Co. 111 Minn. 177, 126 N. W. 541, 27 L.R.A.(N.S.) 1011, 20 Ann. Cas. 663, *supra*), the board clearly failed to sustain its burden. Nor do we think that the board's showing that relator failed to seek employment locally was sufficient in the absence of any showing that the publicity attending the wrongful discharge had not in fact made such an effort futile. It was for the board to show by a fair preponderance of the evidence not merely that relator failed to seek employment, but that by the exercise of due diligence he could have obtained it. Milage v. Woodward, 186 N. Y. 252, 78 N. E. 873. Cf. Martin v. Board of Education, 120 W. Va. 621, 199 S. E. 887. This burden was not satisfied by a request that we judicially notice the great demand for attorneys during World War II.

■ As previously noted, it appears that the board made no deduction on account of sums actually earned. This is contrary to the rule applied in cases of private employments, which we believe should be applied here. Inasmuch as relator contends that several of those items are not deductible in mitigation, we must consider them individually.

First, such sums as relator earned in the practice of law should be deducted upon proof that the employment in which they were earned was inconsistent with relator's duties in the division of social welfare. Horn v. Western Land Assn. 22 Minn. 233, *supra*.

Second, concerning wages earned by relator while employed outside the state, he contends that the portions of such wages earned in overtime are not deductible because earned by effort in excess of that required by his position in the division. While there is some

authority for this proposition (Williams v. Chicago Coal Co. 60 Ill. 149), we feel that a fair rule under the facts and circumstances of this case is that, although relator was required only to seek other like employment, his damages should be reduced by amounts earned at any inconsistent employment during the time that he was wrongfully discharged. Bertholf v. Fisk, 182 Iowa 1308, 166 N. W. 713; Tenzer v. Gilmore, 114 Mo. App. 210, 89 S. W. 341. Clearly, relator's employment while out of the state was inconsistent with his employment in the division, since he could not have done this work at the same time that he was performing his duties with the division. For these reasons, we feel that the sums so earned should be deducted. Atholwood Development Co. v. Houston, 179 Md. 441, 19 A. (2d) 706.

Relator contends also that the sums he earned in a joint venture, the Oxboro Electric Company, should not be deducted, since they are attributable to capital invested therein. While the evidence in the record is fragmentary, it appears that relator's personal services were necessary to the operation and that they accounted in substantial part for his earnings. Should it appear on the board's redetermination that such services were inconsistent with relator's duties in the division, the profits from the enterprise should go in mitigation of the state's damages. The cases are reviewed in Griffin v. Oklahoma Natural Gas Corp. 132 Kan. 843, 297 P. 662, 81 A. L. R. 274. See, also, Stewart Dry Goods Co. v. Hutchison, 177 Ky. 757, 198 S. W. 17, L. R. A. 1918C, 704.

■ Lastly, we arrive at the question whether relator should be allowed interest on the salary withheld, less the deductions discussed above. Where a claim of back wages is not subject to an unliquidated setoff, interest on the sums withheld is properly awarded from the time of the breach. Bang v. International Sisal Co. 212 Minn. 135, 4 N. W. (2d) 113, 141 A. L. R. 657, *supra*. It is true that the authority of that case is somewhat doubtful on the proposition in question. However, it is settled law in this state that interest is properly allowed from the date of the breach where the sum claimed is damages for breach of contract is capable of being made certain

by mathematical computation (2 Dunnell, Dig. & Supp. § 2524, and cases under note 37), and we accordingly affirm the proposition stated. Conceding this, the district court said in its memorandum that if it should be found that relator's salary as class attorney IV is subject to deductions in mitigation of damages he would not be entitled to interest, since the damages would be unliquidated until the proceeding ends in a final finding by the board. This we believe to be incorrect. In Knutson v. Lasher, 219 Minn. 594, 606, 18 N. W. (2d) 688, 696, we stated the rule to be that—

"where the amount due under a contract is certain and liquidated or capable of ascertainment, but is reduced by an unliquidated set-off, interest is allowable on the balance found to be due from the time it became due or suit was commenced."

By this is meant the time that the claim subject to reduction first became due and payable, and in this case that was the time when the various items of salary became due under the employment contract. Bang v. International Sisal Co. 212 Minn. 135, 4 N. W. (2d) 113, 141 A. L. R. 657, *supra.* Accordingly, relator is entitled to interest as indicated in this opinion, computed by the method set forth in state's exhibit D.

The order appealed from is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.

So ordered.